357 P.2d 944

William Ray BUTTERFIELD, a minor, who sues by his next friend, Ellen Weatherston, Plaintiff-Respondent,

v.

WESTERN CASUALTY & SURETY CO., a corporation, Defendant-Appellant.

Clayton RUMSEY, a minor, by his next friend, Layne Rumsey, Plaintiff-Respondent,

v.

WESTERN CASUALTY & SURETY CO., a corporation, Defendant-Appellant.

No. 8914.

Supreme Court of Idaho.

Dec. 22, 1960.

80

Merrill & Merrill, Pocatello, for respondent, William Ray Butterfield, a minor, Hugh C. Maguire, Jr., Pocatello, for Clayton Rumsey, a minor, respondent.

St. Clair, St. Clair & Hansen, Idaho Falls, for appellant.

McFADDEN, Justice.

Appellant Western Casualty & Surety Co., issued a policy of insurance to the Johnson Motor Company, of Rexburg, Idaho. This policy covered a certain 1954 Ford automobile. The automobile medical payments endorsement on the policy provided:

"The company agrees with the named insured, subject to the limit of liability, exclusions, conditions and other terms of this endorsement:

"Insuring Agreement

"1. Automobile Medical Payments. To pay all reasonable expenses incurred within two years from the date of accident for necessary medical, dental, surgical, X-ray, ambulance, hospital, professional nursing and funeral services, pharmaceuticals, eyeglasses and prosthetic devices:

Division 1. *To* or for *each person* who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from any automobile designated herein by the letter "X", *provided the automobile is being used by the named insured or with his permission;"* (Emphasis added)

"* * * Limits of liability * * *
$1,000 each person."

About June 6, 1958, Clayton Rumsey, one of the respondents, purchased a 1956 Dodge

automobile from Johnson Motor Company. This car was not operating properly and was returned for repairs. Johnson Motor Company furnished Rumsey a Jeep to use, which he kept for a few days, and returned. The Dodge still wasn't working properly and was taken back to the Johnson Motor Company several different times for further repairs, and on each occasion Rumsey was furnished another vehicle for use. About June 30 or July 1, 1958, he was loaned the 1954 Ford in which he was injured.

July 2, 1958, Rumsey drove the Ford from his home in St. Anthony, Idaho, to Jackson, Wyoming, accompanied by William Ray Butterfield, the other respondent, and Reynold Palmer. On the return trip, outside of Jackson, Rumsey stopped and Butterfield started driving. The car was immediately involved in an accident with another car, and both of these respondents were seriously injured, resulting in medical and hospital expenses in excess of $1,000 in each instance.

Demand was made for payment under the terms of the insurance policy, which demand was denied, and these suits were instituted by both respondent, each for the full amount of medical payment insurance of $1,000, plus $500 attorney's fees. These actions were consolidated for trial by stipulation of counsel, and trial had before the court without a jury. Judgment was entered for each plaintiff in amount of $1,000 and attorney's fees. From these judgments this appeal is taken.

The problem to be resolved here is whether the car, at the time of the accident, was being used with the permission of Johnson Motor Company, the named insured. If there was no such permission for the use of this car by Rumsey, or by Butterfield, who was driving the car, then, of course, the appellant cannot be held liable.

It is without dispute that Rumsey had permission to use the Ford; the issue is whether the permission was limited, as to time, or as to place of use, or as to purpose of use. Appellant contends that the permitted use had terminated prior to the time of the accident, and that there was neither express nor implied permission for the car to be driven to Jackson, Wyoming, by Rumsey. It is further contended that the permission given was merely for Rumsey to go to and from work, and that the trip to Jackson was a material deviation from the permitted use given to him, and in any event that no permission had been given Butterfield to use the car.

There is a marked conflict in the evidence as to whether there was a time fixed for return of the car, or whether there were other limitations set as to the place of use, or the purpose of use. Mr. Arnold, a salesman for the insured, loaned the Ford to Rumsey, and claimed to have advised Rumsey that his Dodge would be repaired by the

following evening and that a prospective purchaser was to be there to inspect the Ford. Rumsey denied this and claimed that Arnold had agreed to phone him when the Dodge was ready. Arnold testified that he told Rumsey that the car was to be used only for transportation to and from work, and that on one occasion Rumsey, after request, was granted permission to use the car of the Johnson Motor Company, he was then using, to take a date to a movie. Arnold also testified that it was a company policy to loan a car to a customer only to enable him to drive back and forth to work; Rumsey testified, however, that there were no restrictions ever mentioned as to the use of any of the various cars that were loaned, except he was to check the oil in a Chrysler loaned to him.

Concerning the use of the Ford, Rumsey testified:

"Q. Were there any restrictions of any kind placed by Mr. Arnold or anyone else against the use of that automobile by you? A. No.

"Q. When were you to return the Ford, was anything said about that? A. I was tired of making trips down to Rexburg from St. Anthony to get my car and so I asked Brent (Arnold) why he didn't call my grandmother when my Dodge was fixed and he said he would, and it must have been two or three days after I got the Ford that no

call ever came. I was wanting my Dodge back and two or three times I asked Mother if any call had ever been made, and none had ever been.

"Q. So you never did receive any word from Mr. Arnold or anyone else from Johnson Motor Co., that you should return to pick up your Dodge car, is that correct? A. Yes.

Appellant's contention that the period of permissive use had expired prior to the time of the accident is negated by the trial court's finding that no restrictions were placed on the use of the car, and by its conclusion that at the time of the accident the automobile was being used with permission of the named insured. The conflict in the evidence as to other restrictions on the use of the car was resolved by the finding of the trial court

"\* \* \* that the automobile, the 1954 Ford, was loaned by Johnson Motor Co. to Clayton Rumsey without special restriction to replace the automobile which he had purchased and was unable to use."

■ The courts findings, based on competent, though conflicting evidence, cannot be disturbed on appeal. Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063; Fort Hall Indian Stockmen's Ass'n, Inc. v. Thorpe, 82 Idaho 458, 354 P.2d 516, and cases cited therein.

The remaining issue is whether the use of the vehicle at the time of the accident was still with the permission of the named insured, (Johnson Motor Co.,), even though Rumsey, while present in the vehicle, was not driving.

Appellant relies strongly on the cases of American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52, and Card v. Commercial Casualty Ins. Co., 20 Tenn.App. 132, 95 S.W.2d 1281 and contends them to be controlling. The holding of these two cases from Tennessee is that while a named insured can signify his permission to the first permittee to use a vehicle so that the first permittee becomes an additional insured within the terms of the policy, such first permittee was without authority to delegate his power to use the vehicle so as to make a second permittee an additional insured under the so-called "omnibus" provision of a policy, where no express authority to delegate such power had been given.

The holding of these Tennessee cases is based on too restrictive a premise in that it fails to consider that the use of the vehicle has not been changed merely by a change of driver. The better rule, to which we adhere, is that when a general permission is granted by the named insured to use a vehicle, and without any limitation by the named insured against a third person driving, the use of the vehicle by the first permittee is with the permission of the named insured, even though another is driving, provided the use is to serve a purpose, benefit, or advantage of the first permittee. Loffler v. Boston Ins. Co., Inc., D.C.Mun.App., 120 A.2d 691; Boudreaux v. Cagle Motors, La.App., 70 So.2d 741; Standard Accident Ins. Co. v. New Amsterdam Casualty Co., 7 Cir., 249 F.2d 847; Costanzo v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., etc., 30 N.J. 262, 152 A.2d 589; 160 A.L.R. 1206; 5 A.L.R.2d 648; 5A Am.Jur. 97, Automobile Insurance § 96. All these cited cases except Loffler v. Boston Ins. Co., supra, involved the interpretation of "omnibus" provisions in automobile liability insurance policies as opposed to medical payment provisions, but the same wording was being construed.

The case of Loffler v. Boston Ins. Co., supra, dealt with the interpretation of the medical payment provisions of an automobile insurance policy, as in the instant case. The court in holding that the second permittee, driving the vehicle was covered by the provisions of the policy, stated [120 A.2d 692]:

"While there is some conflict among the courts, we think the better rule is that so long as the *use* as distinguished from the *operation* is with the permission of the insured, the insurer is liable (emphasis added).

"This distinction was carefully noted in Persellin v. State Automobile Ins. Ass'n, 75 N.D. 716, 32 N.W.2d 644, 647, where the court in construing language similar to that here involved said: 'In addition to the named insured, it (the policy) makes both persons using the automobile and persons responsible for the use thereof insured persons, if but one condition be met. That condition *is that the actual use of the automobile be with* the permission of the named insured. There is no condition that the *driving or operation of the car must be with the* permission of the named insured, and no condition that a person, other than the user, * * * must have the permission of the named insured, * * *' (emphasis supplied.)

"Additional support for this position is found in Hardware Mutual Casualty Co. v. Mitnick, 180 Md. 604, 26 A.2d 393, 395, where the court held that '* * * using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.' (citing cases). These cases involved the interpretation of 'omnibus' provisions in automobile liability insurance policies as opposed to medical payment provisions, but the same wording was being construed."

Here we are not dealing with that type of case where an express limitation has been placed on a third person driving the car, such as Indemnity Ins. Co. of North America v. Metropolitan Cas. Ins. Co., 59 N.J.Super. 547, 158 A.2d 425, and Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854, for here the permitted use was found to be without special restriction. The language of the court in Loffler v. Boston Ins. Co., Inc., D.C.Mun.App., 120 A.2d 691, 693, is appropriate here.

"In the case before us it seems clear that the car was being used by the insured's son for the very purpose for which permission had been granted. He did not, by the mere act of turning the wheel over to his companion, convert the automobile to a different use. He did not, become a mere piece of supine cargo; he was still using it for 'dating' purposes, only the driver being changed. While it is true that a car cannot be operated without being used, the converse is not true. We must decline to hold that the automobile was not in a permitted use at the time of the tragic accident."

Hawkeye Casualty Co. v. Western Underwriter's Ass'n, D.C.Idaho, 53 F.Supp. 256, cited by appellants is distinguishable from the instant case. In the Hawkeye case, the vehicle involved had been furnished one Borresen, an employee. Borresen, granted one Sandner permission to take two girls to their homes in Boise, Idaho. Instead, a side-trip to Glenns Ferry was made and on

the return trip, one of the girls, under sixteen years of age, inexperienced in driving, without a valid operator's license for driving in the nighttime, was driving in the nighttime when the accident leading to the litigation occurred. The policy involved contained the provision that it did not apply while the automobile was operated by any person in violation of the state law. The court held that where the permission to use the vehicle was for a given purpose it did not imply permission for all other purposes, and that the actual use at the time of the accident must be within the consent of the named insured.

In the instant case there was a finding by the trial court that the Ford was loaned Rumsey without special restriction, and no question was raised as to operation of the vehicle by an unlicensed driver. The Hawkeye case is not applicable here.

Respondents' having filed their motion for additional attorney's fees for services rendered in this court, and considering the services of counsel, the nature of the litigation, and the amount involved, the additional sum of $250 to each respondent is hereby awarded for and as additional attorney's fees. I.C. § 41–1403.

Judgment affirmed.

Costs to respondents.

TAYLOR, C. J., and SMITH, KNUDSON and McQUADE, JJ., concur.