LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY CO., Defendant.

Civ. No. 409.

United States District Court
D. Montana,
Billings Division.
July 29, 1964.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Billings, Mont., for plaintiff.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendant.

JAMESON, District Judge.

### MEMORANDUM OPINION.

Plaintiff seeks reimbursement for amounts paid in settlement of various personal injury and property damage claims and for a judgment declaring the obligations of plaintiff and defendant under two insurance policies. The facts are

not in dispute,[1] and the action involves the construction of pertinent provisions of the respective policies.

On October 25, 1961, Lewis Everling was employed by Peter Kiewit Sons' Company (Kiewit) on a highway construction job. In the course and scope of his employment Everling was driving a dump truck owned by Bert Lee. Lee had rented the truck to Kiewit on October 24, 1961.[2] While crossing railroad tracks of the Chicago, Milwaukee, St. Paul and Pacific Railway Company (Milwaukee) the truck was struck by a Milwaukee train. As a result of the collision, Everling and several Pullman Company employees died, two Milwaukee employees were seriously injured, and the Milwaukee sustained substantial property damage.

Two insurance policies were in effect at the time of this accident. One, a Comprehensive Liability Policy (Automobile and General Liability) had been issued by plaintiff, Liberty Mutual Insurance Company, to Peter Kiewit Sons' Company as the named insured. The other, an Automobile Liability and Physical Damage policy, was issued by defendant, United States Fidelity and Guaranty Company, to Bert Lee, the owner of the truck, as named insured.

Charles Kellum, one of the Milwaukee employees, instituted suit in Montana against Kiewit and the Milwaukee. The Milwaukee instituted an action against Kiewit for the property damage it had sustained. Kiewit, contending that it was an "Omnibus Insured" under defendant's policy, demanded that defendant provide a defense for these actions. The defendant denied liability and refused to defend.

Liberty Mutual then undertook defense of the suits on behalf of Kiewit against both Kellum and the Milwaukee. The Kellum case was settled for $62,500, of which plaintiff agreed to pay $24,500 and the Milwaukee $38,000. The Milwaukee property damage suit was settled for $75,000, of which $1,977 was to reimburse the Milwaukee for one-half the personal injury settlement payments it had paid to passengers on the train.

The parties agree that the amounts paid in settlement were fair and reasonable and that the attorney's fees and expenses incurred by plaintiff in defending the Kellum and Milwaukee suits, a total of $8,094.33, are proper, fair and reasonable.

An action instituted by Alfred Perry, the other Milwaukee employee, is pending in Illinois. Plaintiff has undertaken the defense of this action for Kiewit. Other litigation arising from the death of the Pullman porters is anticipated.

In a third party complaint against Kiewit, defendant alleges that under the truck rental agreement Kiewit was "required to maintain for the benefit of this defendant's insured, Bert Lee, liability and property insurance to cover Bert Lee's truck * * *", and that if defendant is legally obligated to plaintiff, defendant "became subrogated to whatever right" Bert Lee might have against Kiewit.

■ Paragraph 3 of the Truck Rental Agreement, however, specifically provided that, "The Contractor (Kiewit) will provide public liability and property damage insurance to cover its use of such trucks, *but is under no obligation to provide any insurance coverage for the Owner (Lee).*" (Emphasis added).

---

1. It appears from the discussion between court and counsel at the beginning of the oral argument that the case was submitted upon the agreed statement of facts, supplemental statements made by counsel in open court, and answer to cross-complaint subsequently filed on behalf of Kiewit.

2. The Truck Rental agreement provides inter alia that, "The Contractor will provide public liability and property damage insurance to cover its use of such trucks, but is under no obligation to provide any insurance coverage for the Owner. The Contractor shall not be responsible or liable to the Owner for any damage sustained by said trucks while they are rented by the Contractor, regardless of how or by whom such damage is caused."

This provision is directly contrary to defendant's allegation that under the contract Kiewit was obligated to provide coverage for Lee. Kiewit's only obligation was to provide coverage for the use of the truck. This it did through the policy issued by plaintiff. Defendant's third party complaint must be dismissed.

Six questions are presented by the briefs of the respective parties:[3]

(1) Whether Everling was an "insured" under the Liberty Mutual Policy.

(2) Whether Everling and Kiewit were "insureds" under the U.S.F. & G. Policy.

(3) Whether the U.S.F. & G. Policy was primary and the Liberty Mutual Policy excess, as plaintiff contends; or the Liberty Mutual Policy primary and the U.S.F. & G. Policy excess, as defendant contends.

(4) Whether the truck was insured by Liberty Mutual on a "cost of hire" basis, and the effect of this policy provision.

(5) Whether separate litigation against the Everling estate is necessary to establish his liability.

(6) Whether the parties are liable "pro rata".

Was Everling an "insured" under the Liberty Mutual Policy?

Peter Kiewit Sons' Co. is the named insured in this policy. Paragraph I of the Insuring Agreements, Coverages A and B, provides for bodily injury and property damage coverage. Paragraph III, "Definition of Insured", provides that the word "Insured" includes the named insured and, under coverages A and B, "any person while using * * * a hired automobile * * * provided the actual use of the automobile is by the named insured or with his permis-

sion." A hired automobile is defined under Conditions (3(b) (2)) as "an automobile used under contract in behalf of * * * the named insured * * *". Clearly this truck, rented from Lee, was being used under a contract; it was being used on behalf of the named insured in the policy, Peter Kiewit Sons' Co.; and it was being used with the permission of Kiewit, the named insured.

Paragraph III of the Insuring Agreements further provides, however, that the insurance "with respect to any person or organization other than the named insured" does not apply * * * "(d) with respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee".

■ Plaintiff argues that since Everling was an employee of a lessee (Kiewit) he is not covered. The exception, however, refers to an owner or a lessee *other than the named insured*, or to any agent or employee of *such* owner or lessee. It appears to me that the latter clause clearly refers to an agent or employee of an owner or lessee other than the named insured. Everling was an employee of Kiewit, the named insured, and is covered by the Liberty Mutual Policy.[4]

Are Kiewit and Everling "Insureds" under the U.S.F. & G. Policy?

In this policy Bert Lee is the named insured. Paragraph I of the Insuring Agreements, Coverage A and B, provides for bodily injury and property damage coverage. Paragraph III, "Definition of Insured" provides that the word "Insured" includes the "Named Insured * * * and also includes any person while using the automobile * * * provided the actual use of the automobile is * * * with the permission of the

---

3. The work of the court has been complicated by the fact that four briefs were filed by each side at various stages of the proceedings, and it has been difficult to formulate clear cut issues on the basis of the briefs.

4. The mere fact that Everling was an employee of Kiewit would not in itself af-

ford coverage to Everling regardless of other policy provisions. See Gilkey v. Andrew Weir Insurance Co., 9 Cir. 1961, 291 F.2d 132, and Fidelity & Casualty Co. of New York v. Reece, 10 Cir. 1955, 223 F.2d 114, where the exceptions from coverage clearly included employees of the Insured.

named insured." It cannot be questioned that the use of the truck by Kiewit was with the permission of Lee. This is evidenced by the leasing agreement between them.

■ Kiewit is insured under the U.S. F. & G. Policy. The same is true of Everling. Under all the circumstances it is clear that Everling was driving the truck with the implied, if not express, permission of Lee, the named insured. The contract between Lee and Kiewit specifically provides that Kiewit shall hire and pay the wages of drivers, who will be under Kiewit's direction and control. Everling himself signed the truck rental agreement on behalf of Lee, the owner. There can be no doubt that it was contemplated that Everling in particular would drive the truck as an employee of Kiewit. No limiting provisions on the use of the truck appear in the rental agreement.

■ While a few cases have reached a contrary conclusion, "(T)he better rule * * * is that when a general permission is granted by the named insured to use a vehicle, and without any limitation by the named insured against a third person driving, the use of the vehicle by the first permittee is with the permission of the named insured, even though another is driving, provided the use is to serve a purpose, benefit, or advantage of the first permittee." Butterfield v. Western Casualty and Surety Co., 1960, 83 Idaho 79, 357 P.2d 944, 947.[5]

It is my conclusion that both Everling and Kiewit were insured under the U.S. F. & G. Policy. In other words, in the absence of any other policy, either policy would afford coverage for both Kiewit and Everling.

The questions listed under 3, 4, and 6 are related and will be considered together. Pertinent provisions of the respective policies bearing upon these questions are:

*Liberty Mutual Policy*

Under Conditions

"14. *OTHER INSURANCE*. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

"1 *Premiums* * * *

"When used as a premium basis: * * *

"(6) the words 'cost of hire' mean the amount incurred for (a) the hire of automobiles, including the entire remuneration of each employee of the named insured engaged in the operation of such automobiles subject to an average weekly maximum remuneration of $100, and for (b) pick-up, transportation or delivery service of property or passengers performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of 'cost of hire' shall be 5% of the applicable hired automobile rates, provided the owner of such hired automobile has purchased automobile Bodily Injury Liability and Property Damage Liability insurance covering the interest of the named insured on a direct primary basis as respects such automobile and submits evidence of such insurance to the named insured;".

5. See also 7 Am.Jur.2d 436, Automobiles § 117; National Grange Mutual Liability v. Metroka, 3 Cir., 1958, 250 F.2d 933.

*U.S.F. & G. Policy*

Under Conditions

"20. *OTHER INSURANCE*
Coverages A, B, D, E,
F, G, H and I

If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

Under Insuring Agreements

"IV(3) *Temporary Substitute Automobile*—under coverages A, B and division 1 of coverage C, an automobile not owned by the Named Insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

Insuring Agreement V relates to the use of other automobiles by an individual who is the named insured, and is not applicable.

Both policies, with certain exceptions, provide for pro rata liability in the event of other insurance against the same loss.

The Liberty Mutual Policy provides that with respect to a loss arising out of the maintenance or use of "any hired automobile insured on a cost of hire basis or the use of any non-owned automobile", the insurance provided by this policy "shall be excess insurance over any other valid and collectible insurance". Plaintiff argues (1) that as to Everling the vehicle was a "non-owned automobile", and (2) that as to Kiewit, the loss arose out of the use of a "hired automobile insured on a cost of hire basis".

An owned automobile is defined as "an automobile owned by the named insured"; a hired automobile as "an automobile used under contract in behalf of * * * the named insured * * *"; and a non-owned automobile as "any other automobile". As previously discussed, the truck was being used under a contract in behalf of Kiewit, the named insured under the Liberty Mutual policy. The definition does not require that the named insured drive the automobile; only that it be used "under a contract in behalf of * * * the named insured". The non-owned automobile provision does not render Liberty Mutual coverage excess only.

Was the truck insured by Liberty Mutual on a "cost of hire basis" as that term is used in its policy?

It is stipulated (paragraph X) that:

"The premium paid by Kiewit to Liberty Mutual was based upon the total insurable payroll by insurance classification, and was determined from a quarterly audit. Included was the gross amount paid in rental for all trucks used by Kiewit, and the gross total payroll including overtime, for all employee drivers. The 1956 International truck owned by Lee and rented to Kiewit, and the gross earnings paid to Everling, were not separately identified, but were simply included in the over-all gross audit."

As set forth supra, under the Liberty Mutual Policy (Condition 14) the insurance "with respect to loss arising out of * * * the use of any hired automobile insured on a cost of hire basis" shall be excess insurance. Condition 1 of this policy relates to "Premium". It provides that the premium stated in the declarations is an estimate only and that upon termination of the policy, "the earned premium shall be computed in accordance with the company's rules, rates,

rating plans, premiums and minimum premiums applicable to this insurance". The next paragraph under "Premium" is prefaced by the words, "When used as a premium basis:". This is followed by eight subparagraphs defining the meaning of various words and phrases. Subparagraph (6), supra, defines the words "cost of hire".

It is undisputed that the premium here was not computed in accordance with the last sentence of subparagraph (6) prescribing a rate of 5 percent of the applicable hired automobile rates, or that the owner had not purchased insurance covering the interest of Kiewit "as respects such automobile".

Plaintiff argues that inasmuch as the premium was based on the cost to Kiewit for the "hire of the automobile", including the entire remuneration of each employee of Kiewit, the truck was in fact insured on a "cost of hire" basis. It is plaintiff's position that if the owner has provided insurance covering the interest of the named insured and submitted evidence thereof, then the rate for "cost of hire" is 5 percent of the applicable hired automobile rates; but in the absence of a showing of other primary insurance, the vehicle is still "insured on a cost of hire basis" pursuant to the provision of (a) of the first sentence of subparagraph (6), even though the premium is based upon the total "cost of hire".

■ Although this contention sounds plausible and has given the court no little trouble, it is my conclusion that construing the pertinent provisions of Conditions 1 and 14 in their entirety, and particularly giving effect to the last sentence of subparagraph (6), the provision for excess coverage is applicable only when the premium is computed at the reduced rate.

There is no proof with respect to the precise manner in which the premium was computed, nor was there any proof regarding the practice of insurance companies in computing premiums under this policy provision.[6] Presumably the total cost of hire was included and the premium computed on the basis of primary coverage for a hired vehicle. The named insured was required by his contract with the owner to procure primary coverage for the leased vehicle and in fact did so.

Obviously, there is a sound basis for a substantial reduction in premium where primary coverage is provided by the owner and the coverage afforded by the lessee's policy is excess only. Where, however, as here, there is no evidence of primary insurance furnished by the owner, then there is no logical reason why the insurance should be excess only. If the insurance afforded were excess only, then it would seem that the insurer is charging a higher premium for the same coverage.

While this policy provision is by no means a model of clarity, I cannot agree with plaintiff that the last sentence may be disregarded, or that it does not qualify both (a) and (b) of the preceding sentence. In other words, the phrase "cost of hire" is defined by (a) and (b), but the method of computing the premium on this basis is set forth in the last sentence. Insurance on a cost of hire basis within the meaning of Conditions 1 and 14 includes computation of the premium on the basis prescribed in subparagraph (6).

■ The policy language is ambiguous at best. The rule is well established in Montana that "[w]here a contract is uncertain or ambiguous and requires construction, and the contract is fairly susceptible of two constructions, one fa-

---

6. In plaintiff's brief filed December 16, 1963, there appears the following statement: "As of the date of this brief, we understand that discussions are taking place between the parties concerning whether or not defendant can rely upon the 'cost of hire' clause in view of provisions of certain automobile casualty manuals under which the parties operate, and by which they are bound." No reference is made in the agreed statement or subsequent briefs to any "casualty manuals under which the ·parties operate".

vorable to the insurer and the other favorable to the insured, the one favorable to the insured will be adopted". Kansas City Fire & Marine Insurance Company v. Clark, D.Mont.1963, 217 F.Supp. 231, 235, and cases therein cited.

The "cost of hire" provision was construed in National Surety Corp. v. Western Fire & Indemnity Co., 5 Cir. 1963, 318 F.2d 379. It is true that to some extent this case is distinguishable by reason of the fact that there both policies of insurance had been issued to the same insured and the actual method of computing the premium is not shown except that it appeared the same basis was used for both owned and hired vehicles. The court does make it clear, however, that there must be a logical and reasonable basis for holding that coverage is excess rather than primary.[7] The court said in part:

"The premium clause in Western's policy clearly shows that 'cost of hire' was one basis that might be used in computing the premium for coverage on hired automobiles. Indeed, the policy defines the words 'cost of hire,', 'when used as a premium basis.' But the liability schedule plainly shows that the cost of hire basis was not used and that the premium basis used was the same for coverage on both owned and hired automobiles." (318 F.2d at 383.)

\* \* \* \* \* \*

"To provide that liability insurance for loss resulting from the maintenance or use of a hired automobile should be excess insurance over other insurance for such loss, but that insurance for loss resulting from the ownership, maintenance or use of an owned automobile should be primary and subject to proration with other insurance for such loss, when the basis for the premium charged is identical with the respect both to the coverage of hired and owned automobiles, is illogical and unreasonable.

"We conclude that since the water truck, although a hired automobile, was not insured by Western on a cost of hire basis, that Western's excess insurance provision does not apply, and that its insurance is primary." (318 F.2d at 387).

With respect to the U.S.F. & G. Policy, the provision making the coverage excess applies only "if a temporary substitute automobile" was in use. This exception has no application under the facts in this case. Defendant argues further, however, that under the provisions of the lease agreement, Kiewit was to provide insurance for the use of the truck; that equity would impose liability on Liberty Mutual as primary insurer, and the U.S. F. & G. coverage is excess.

■■ Liability, however, must be determined from a "construction of the language employed by the insurers in their respective policies". Continental Casualty Co. v. American Fidelity & Cas. Co., 7 Cir. 1960, 275 F.2d 381, 384, where the court considered a truck lease agreement comparable to the one here involved. The truck rental agreement had no relationship to the U.S.F. & G. Policy, which was then in effect, and did not alter or modify the terms of that insurance contract.[8]

Is separate litigation against the Everling estate necessary to establish his liability?

■ In answer to plaintiff's contention that as subrogee of Kiewit, plaintiff was entitled to recoup from the Everling estate, defendant argued that neither Everling nor his estate was a named party defendant in any of the cases filed

---

7. As the court well said: "Where a contract is susceptible of two constructions, that one will be preferred that is rational, reasonable and probable and will result in a contract in terms prudent men would naturally make."

8. While not precisely in point, this conclusion is consistent with the holding of the Montana Supreme Court in Mountain States Mutual Casualty Co. v. American Casualty Co., 1959, 135 Mont. 475, 342 P.2d 748.

against Kiewit and that no judgment has been entered against Everling or his estate establishing his liability or fault. I assume that my conclusion that Everling and Kiewit are both covered by both policies and that the parties are liable pro rata disposes of this issue. If not, it seems clear that the court may properly settle all issues in this action, particularly in view of the agreement of the parties that the settlements and expenses were fair and reasonable. See Pacific Employers Insurance Co. v. Hartford, 9 Cir. 1955, 228 F.2d 365, and cases there cited.

I have concluded that counsel should be given an opportunity to file further memoranda on plaintiff's claim for reimbursement in full of the expenses and attorney fees, in the light of my conclusion that the parties are liable pro rata for the amounts paid in settlement. This question is argued in plaintiff's original brief on the basis that Liberty Mutual was an excess carrier. It does not appear to have been covered in any of the subsequent briefs filed by either party.

## SUPPLEMENTAL OPINION

In memorandum opinion filed June 4, 1964, counsel were given an opportunity to submit additional memoranda on plaintiff's claim for reimbursement of expenses and attorney fees incurred in defending the actions and claims against Peter Kiewit Sons' Company.

Plaintiff contends that since each party has the same contractual obligation to defend, the expenses and attorney fees should be borne equally. Defendant contends that since plaintiff had a contractual obligation to defend Kiewit, and the demand made upon the defendant was to assume the defense on the basis that defendant was a primary and plaintiff an excess carrier, defendant should not be charged with any of the expenses and attorney fees.

There are two general lines of authority with respect to the right to recover defense expenses where the insured, or an insurer who has performed, seeks contribution from an insurer who has refused to provide a defense. On the one hand, it has been held that where two companies insure the same risk and the policies provide for furnishing the insured with a defense, neither may require contribution from the other; that the duty to defend is personal to each insurer, and that neither is entitled to divide that duty with the other.[1]

On the other hand, many courts have held that defense expenses should be shared prorata. Cases holding that proration is proper include Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 9 Cir., 1952, 195 F.2d 958; General Acc. Fire & Life Assur. Corp. v. Continental Cas. Co., 9 Cir. 1961, 287 F.2d 464; Continental Casualty Co. v. Zurich Insurance Co., 1961, 57 Cal.2d 27, 17 Cal.Rptr., 12, 366 P.2d 455;[2] Bituminous Gas Corp. v. Travelers Ins. Co., D.Minn.1954, 122 F.Supp. 197.[3]

It is my view that the rule providing that expenses be prorated presents the more equitable solution. This rule has been followed by the Court of Appeals for the Ninth Circuit in at least two cases, cited supra. The Supreme Court of Montana has not passed upon the question. In the absence of a controlling Montana decision, I will follow the rule announced by the Ninth Circuit.

It is accordingly my conclusion that both the amounts paid in settlement and

1. See United States Fidelity & Guar. Co. v. Tri-State Insurance Co., 10 Cir. 1960, 285 F.2d 579, and cases there cited.

2. In this case the Supreme Court of California, in Bank, expressly disapproved a number of prior California cases which denied contribution.

3. In all of these cases the expenses of defense were prorated on the same basis as the awards of damages or amounts paid in settlement. The decisions did not, however, expressly consider the contention plaintiff asserts here that the defense expenses should be borne equally.

the expenses and attorney fees should be prorated on the basis of the coverage afforded by the respective policies.

Counsel are requested to confer and prepare appropriate judgment in the light of this supplemental opinion and the original opinion entered June 4, 1964.