**ROYAL INDEMNITY COMPANY, a body corporate of the State of New York**

v.

**Alonzo Henry STEVENSON, Charlotte E. Grahe, as surviving widow, as mother and next friend of James L. Grahe, Jr., and Christine J. Grahe, surviving infant children of James L. Grahe, and as Administratrix of the Estate of James L. Grahe, deceased, Thomas Edward Curley, Mayor and City Council of Baltimore, James E. Newby, Virginia Newby, individually and as mother and next friend of Anthony Newby, Michael Newby and Dwayne Newby; Joseph Krause and Carole Krause, his wife and Unsatisfied Claim and Judgment Fund of the State of Maryland.**

**Civ. A. No. 19268.**

United States District Court,
D. Maryland.

March 6, 1970.

Benjamin C. Howard and Robert L. Karwacki, Miles & Stockbridge, Baltimore, Md., for plaintiff.

Roland Weiss, Rosen & Esterson, Browne L. Kooken, Piper & Marbury, and Robert L. Simmons, Fanseen, Schneider & Hymes, Baltimore, Md., for defendant Alonzo Henry Stevenson.

George W. White, Jr., and Samuel D. Hill, Buckmaster, White, Mindel & Clarke, Towson, Md., for defendant Charlotte E. Grahe.

Max R. Israelson and Jerome J. Seidenman, Israelson, Pines & Jackson, Baltimore, Md., for defendant Thomas Edward Curley.

George L. Russell, Jr., City Solicitor, William R. Merriman, Sheldon London and A. Douglas Owens, Asst. City Solicitors, City of Baltimore, for Mayor and City Council of Baltimore.

Roland Walker, Walker & Smelkinson, Baltimore, Md., for defendants James Newby and Virginia Newby, his wife.

Sidney Schlachman, Gomborov, Steinberg & Schlachman, Baltimore, Md., for defendants Joseph Krause and Carole Krause.

Francis B. Burch, Atty. Gen., and William E. Brannan, Asst. Atty. Gen. for State of Maryland, for Unsatisfied Claim and Judgment Fund.

WATKINS, District Judge.

This is a suit brought by the plaintiff' insurance company, Royal Indemnity Company (Royal), a corporation incorporated under the laws of the State of New York and having its principal place of business in the State of New York, for a declaratory judgment against Alonzo Henry Stevenson, the driver of a truck involved in a collision, the Unsatisfied Claim and Judgment Fund of the State of Maryland and the remaining defendants, each of whom suffered either personal injuries or property damage as a result of said collision. The defendants are citizens of the State of Maryland. As the amount in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00, the jurisdiction of this court is based upon diversity of citizenship. The purpose of and the relief prayed for in this suit is a declaration that defendant Stevenson was not an "insured" of the plaintiff at the time of the accident in question and that, accordingly, the plaintiff is not liable for any claims or judgments recovered against Stevenson by the injured defendants and in addition for an injunction against such defendants restraining them from prosecuting any suit against plaintiff Royal or defendant Stevenson arising out of the accident in question until the question of coverage has been adjudicated in this court.

On the date of the accident there was in full force and effect a policy of automobile liability insurance which plaintiff Royal had issued to the Hertz Corporation (Hertz) and which afforded coverage within its terms to Hertz, General Valet Services, Inc. (General Valet) and others in the total amount of $100,000.00 for personal injuries to one person, of $300,000.00 for personal injuries to more than one person and of $50,000.00 for

property damages arising out of any one occurrence. This policy of insurance had been obtained by Hertz pursuant to a Truck Lease Service Agreement between Hertz and General Valet whereby General Valet rented from Hertz on a long term basis a 1966 Chevrolet delivery van truck. Hertz had also, pursuant to the requirements of the Maryland Motor Vehicle Financial Responsibility Law, filed with the Department of Motor Vehicles of Maryland evidence of the insurance covering said rented vehicle.

General Valet operates a laundry and dry cleaning establishment on the Fort George G. Meade, Maryland grounds, catering primarily, if not exclusively to the needs of its residents. Stevenson was an employee of Valet. His duties consisted primarily of making laundry and dry cleaning deliveries on the aforesaid Army post during the day with the leased truck involved. It was his practice to drive the truck in question to his home in Baltimore at the end of each day, dropping off several co-employees on the way and picking them up the next morning on his way back to work. From Friday to Monday he was to take the truck to his home and repeat the cycle each week. On Sunday, December 3, 1967, at approximately 7:20 p. m., the rented vehicle while operated by Stevenson struck a Baltimore City fire truck which was responding to an alarm. After claims were made against Stevenson and General Valet and plaintiff Royal as a result of damages suffered in this collision, Royal brought the instant suit denying coverage as to Stevenson on the ground that he was not operating the truck with the permission of General Valet and hence under the "omnibus clause" of the policy in question the protection afforded by the policy was not extended to him. Defendant Grahe filed a motion for summary judgment on the ground that use by permission of General Valet was irrelevant to the issue of coverage as

Stevenson was operating the truck with the permission of Hertz, *the named insured.*

■ Initially the court must determine whether or not it has jurisdiction over this suit, and if so, whether or not the court should exercise its discretion in favor of entertaining jurisdiction. Clearly diversity jurisdiction exists. This court had occasion in the case of Nationwide Mutual Insurance Co. v. Simms, D.Md.1964, 231 F.Supp. 787 to consider in extenso the question of whether or not declaratory relief should be given as to the issue of permissive use sufficient to make one an additional insured under the omnibus clause of a liability policy. For the reasons set forth in that opinion and on the basis of the authorities cited therein this court holds that it has jurisdiction and will exercise its discretion in favor of retaining jurisdiction as to the issue of whether or not there was a permissive use in the instant case.

■ Ordinarily, the question of permissive use is one of fact to be resolved by the jury or the court sitting as the trier of fact (American Auto. Insurance Company v. Fulcher, 4 Cir. 1953, 201 F.2d 751, 756) thus making a motion for summary judgment in a case raising such an issue singularly inappropriate. In the instant case, however, defendant Grahe urges that the interrelationship of the insurance policy issued by Royal to Hertz, the Truck Lease Service Agreement between Hertz and General Valet and certain provisions of the Maryland Motor Vehicle Financial Responsibility Law (Article 66½, sections 116–149A of the Annotated Code of Public General Laws of Maryland) effected a permissive use as a matter of law. For the purposes of deciding this specific motion none [1] of the parties contends that Stevenson had express permission to drive the truck at the time of the accident.

1. Although only defendant Grahe has formally moved for summary judgment, various others of the injured defendants have informally joined in the motion by briefing the points involved, by oral argument thereon and the filing of amended answers asserting the position taken by Grahe.

In 1967, section 117 of Article 66½ of the Annotated Code of Public General Laws of Maryland provided:[2]

"§ 117. For rent vehicles.

"(a) Notice to Department of intention to engage in business.—It shall be unlawful for any person to engage in the business of renting to others, any motor vehicle, trailer or semi-trailer without a driver, until such person shall first notify the Department of his intention to engage in the aforesaid business.

"(b) Proof of financial responsibility required.—The Department shall not register any motor vehicle, trailer or semitrailer to be so rented, unless and until the person owning such motor vehicle shall give proof of financial responsibility as provided by this article, and such proof has been accepted by the Department, and the Department shall revoke the registration of any such vehicle whenever the Department ascertains that such owner has failed, or is unable, to maintain such proof of financial responsibility.

"(c) Proof to cover operators and owners.—Proof required under this section shall cover every person using or operating a motor vehicle under a rental agreement and shall also cover the person owning such motor vehicle.

"(d) Allowing another to drive without permission of owner.—Whenever a person rents from another a motor vehicle without a driver, it shall be unlawful for the person so obtaining the use of said motor vehicle to permit another person to operate the said motor vehicle without first securing the permission of the person owning the said motor vehicle.

"(e) Penalty.—Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00). (An.Code, 1951, § 115; 1943, ch. 1007, § 108; 1955, ch. 434.)"

Section 130(1) provided:

"§ 130. Methods of establishing proof of financial responsibility.

"Proof of financial responsibility, when required under the provisions of this article, may be established by any of the methods hereunder set forth, namely:

"(1) By a policy or policies of insurance.

∗    ∗    ∗    ∗    ∗    ∗

and section 131 provided inter alia:

"§ 131. Policy of insurance as proof of financial responsibility.

∗    ∗    ∗    ∗    ∗    ∗

"(a) Such policy of insurance shall meet the requirements enumerated hereunder when:

"(3) It shall extend to insure any person using or legally responsible for the use of any motor vehicle described in the said policy, when such use is with the permission of the insured person named in the said policy;"

Pursuant to these statutory requirements the policy in question under the heading "Insuring Agreements" provided:

"III. Definition of Insured.

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. ∗  ∗  ∗"

No one contends that this omnibus clause was not drawn in strict compliance

**2.** Section 117 was amended in 1969 but the amendment is in no way pertinent to the question before the court.

with the Maryland Motor Vehicle Financial Responsibility Law nor in fact could such a contention be made as the form of any policy of insurance offered as proof of financial responsibility under that enactment must be submitted to the Commissioner of Insurance and must be approved by him. (Article 66½, section 131; see also: Mount Beacon Insurance Company v. Williams, D.Md.1969, 296 F.Supp. 1094, 1100 wherein Chief Judge Roszel C. Thomsen of this court in considering an *identical* omnibus clause in a policy not issued to prove "financial responsibility" but to show compliance with the UCJF Act noted that, although the legislature under the latter act had not seen fit to require the use of an omnibus clause, in practice "the Insurance Commissioner will not approve any insurance policy insuring an automobile unless such policy contains an omnibus clause satisfactory to the Commissioner. The policy in this case, including its omnibus clause [identical with the one in the instant case], *was approved* by the Commissioner." (emphasis supplied).

In order then to urge the existence of a permissive use as a matter of law, defendant Grahe and the others informally joined with her turn to paragraph 11 of the Truck Lease Service Agreement between Hertz and General Valet which provides:

"11. Liability Insurance. Hertz shall, at its sole cost, provide and maintain during the term of this Agreement, a policy of automobile liability insurance * * * *which policy shall insure Hertz and Customer and their respective agents and employees with respect to liability as a result of the ownership, maintenance, use or operation of vehicles furnished by Hertz to Customer pursuant to this Agreement.* Said insurance shall be primary * * * and shall afford Bodily Injury limits of not less than $100,000.00 * * * $300,000.00 * * * and $25,000.00 * * * (Emphasis supplied.)"

From this single paragraph the moving defendants conclude: "Therefore, based on Royal's naming Hertz as the named insured, and its acceptance of Hertz' agreement with Valet that the policy shall insure Valet's employees, and further based on the fact that it would have been unlawful for Valet to allow Stevenson to operate the rented vehicle without Hertz' permission, Hertz complied with the Maryland Code and thereby gave blanket permission to Valet's employees to operate the leased vehicle. Again, this is evidenced by Royal's acceptance of paragraph 11 of the agreement, between Hertz and Valet."

It is clear that paragraph 11 of the service agreement has absolutely nothing to do with the use or operation of the leased vehicles. It is an undertaking by Hertz that it will provide liability insurance, nothing more. The type of use of the vehicles which Hertz will permit and the scope of the permission to operate granted by Hertz are spelled out elsewhere in the agreement. In the introductory paragraph of the leasing contract it is agreed that each vehicle placed in the service of General Valet is "to be used *in the normal and ordinary course* of Customer's business above set forth [Retail Cleaning and Laundry] at the location set forth in the applicable Schedule A for the respective vehicle, *upon the terms and conditions set forth in this Agreement* * * *." This is no broad blanket permission to operate a leased vehicle. Nor is paragraph 13 of the leasing agreement which states in pertinent part:

"13. *Customer Controls Drivers.*

All vehicles leased to Customer under this Agreement shall be operated only by safe, careful, legally qualified drivers having a proper license to be *selected, employed, controlled* and paid by Customer, said drivers being conclusively presumed to be the employees of Customer only, and Customer shall cause said vehicles to be used and operated with reasonable care and precaution to prevent loss and damage to said vehicles because of negligent or reckless use, abuse, fire, theft, colli-

sion, or injury to persons or property * * * " (Emphasis supplied).

Neither counsel for plaintiff Royal nor counsel for injured defendants have cited any cases construing the effect of such language in a leasing agreement upon the coverage offered under an omnibus clause to an employee of the lessee. By statute, section 117(d) of Article 66½, the lessor's permission to operate a leased vehicle must be obtained. Indeed not to do so is made a crime. Paragraph 13 is obviously a delegation to General Valet, as lessee, of Hertz' authority to grant such permission thus obviating the necessity for General Valet to obtain express permission from Hertz each time drivers are changed. Thus it can be seen that the situation arising under a leasing agreement as respects permissive use is analogous to, if not identical, with, the situation arising in a first permittee— second permittee type of case. Here there is no dearth of case law. (See cases collected in: 7 Appleman, Insurance Law & Practice section 4361; 7 Am.Jur.2d, Automobile Insurance sections 116 and 117; and Annotation 4 A. L.R.3rd 10, Omnibus Clause—Consent). Although the cases are numerous, the law is not as clear or the courts as unanimous in their approach as might be hoped. Circuit Judge Harrison L. Winter, then a district judge of this court, had occasion in 1965 to attempt to predict the approach that would be taken by the Court of Appeals of Maryland in a first permittee—second permittee situation and *under the facts of the case before him* held that the first permittee had implied authority to authorize another to operate the vehicle in question, *that the first permittee in fact gave permission to* another and that said other, a second permittee, thereby became authorized by the legal owner and named insured to operate the vehicle and hence under the omnibus clause was covered by the policy. (Ohio Casualty Insurance Company v. Pennsylvania Nat. Mut. Cas. Ins. Co., D.Md.1965, 238 F.Supp. 706, aff'd. per curiam, 4 Cir. 1965, 352 F.2d 308). In a 1966 casenote appearing in the Maryland Law Review the casenote writer in reviewing the Ohio Casualty Insurance Company case referred to Judge Winter's holding as "an informed prediction" and summarized the general law in this area as follows (footnote references omitted):

"Several states by statute require an automobile insurance policy to contain an omnibus clause. The typical omnibus clause extends coverage to one having 'permission' of the named insured, provided the 'actual use of the car is within the scope of the permission.' 'Actual use' refers to the purpose for which the vehicle was being used at the time of the accident, not to the identity of the operator. If the initial permission is silent as to authority to delegate, as in the principal case, the second permittee is generally held to have no permission within the meaning of the omnibus clause where he has been delegated actual use by the first permittee, although there is some authority to the contrary. Moreover, permission given by the named insured generally does not extend to a second permittee allowed to operate the car by the first permittee. However, courts frequently find implied permission when the first permittee participates in the actual use, i. e., when he is riding in the car at the time of the accident, or when the second permittee is furthering a purpose common to himself and the first permittee.

"Maryland by statute requires an automobile insurance policy to contain an omnibus clause. Maryland agrees that permission to delegate operation can be implied, and Maryland courts have thus far extended coverage to a second permittee where the first permittee was riding in the car at the time of the accident. The District Court thus made an informed prediction of what Maryland law will be when dealing with the situation in the principal case." (Insurance—Omnibus Clause in Automobile Liability Policy Held to Cover Second Permittee

of Named Insured. 26 M.L.R. 90, 90–91).

As may be seen by the use of the words "is generally held * * * although there is some authority to the contrary"; "Moreover"; "However, courts frequently find * * *", the law is far from clearly and firmly established in this area. Indeed as recently as January 8 of this year the Court of Appeals of Maryland quoted a lower court state judge as characterizing Judge Winter's holding in the Ohio Casualty Insurance Company case as "an informed prediction of what the Maryland law" would be and then the court reversed the lower court on other grounds without indicating in any way its own feeling as to Judge Winter's "prediction." (Keystone Ins. Co. v. Fidelity and Casualty Co. of N. Y., 1970 Md., 260 A.2d 275). Thus the Maryland law relative to the coverage extended under an omnibus clause to a second permittee remains to be fully developed and announced by the Court of Appeals of Maryland.

Moreover, it would not appear that Maryland law will control in the instant case. As Judge Winter succinctly stated in the Ohio Casualty Insurance Company case:

"At the outset, consideration must be given to the law to be applied. In the exercise of diversity jurisdiction a district court looks to the law of the state in which the court sits to determine what conflict of laws rule is applicable, Ohio Casualty Insurance Company v. Ross, 222 F.Supp. 292 (D.C. Md.1963). Maryland law is that an insurer's liability under an automobile liability policy is to be determined in accordance with the law of the place where the contract was entered into, and where the contract provides, as does * * * [Royal's] policy in the instant case, that it is not valid until countersigned by '* * * a duly authorized representative of the company,' the place of countersigning is held to be the place of making the contract, Ohio Casualty Insurance Company v. Ross, supra," (page 295). (Ohio Casualty Insurance Company v. Pennsylvania National Mutual Casualty Insurance Co., D.Md.1965, 238 F.Supp. 706, 708).

None of the parties has taken any position as to what law is applicable.[3] However, the Evidence of Insurance which Hertz caused to be filed with the Maryland Department of Motor Vehicles, a copy of which is attached to the original complaint and to the amended complaint as exhibit "C", appears to indicate that the policy in suit was countersigned in New York, N. Y. and that, accordingly, New York law applies.

Thus to decide the issue of coverage as a matter of law by way of summary judgment the court would be required first to determine on a meager record, and without any indication from counsel of their respective positions, what law was applicable. Secondly, the court would probably be required to forecast or predict what the applicable state law would be in view of the paucity of cases dealing specifically with leasing agreements. And thirdly, the court would have to do this in a factual vacuum. Coverage in the instant case can not finally be ruled upon without a development of the relevant facts. As was said in National Grange Mutual Liability Co. v. Metroka, 3 Cir. 1958, 250 F.2d 933, 934:

"The books are full of cases in which the question is the liability of an insurance company when the bailee of an automobile entrusts the driving to someone else. See cases collected in Annotation, 160 A.L.R. 1195 (1946). *But this is a situation in which a collection of judicial decisions is of little*

3. Indeed although three memoranda were submitted to the court, two urging coverage of defendant Stevenson and one denying that he was covered, only one case was cited in any of these memoranda and that single case was a Maryland case admittedly cited for the well recognized general proposition that an insurer is presumed to have issued its policy in compliance with any applicable statutory requirements.

*value.* In the absence of an express statement either way by the named insured, the problem boils down to a determination whether the wording and surrounding circumstances of the initial permission warrant a finding that the delegation of authority to operate the vehicle was permitted by implication. *'It is settled law that the question of implied permission is one of fact to be resolved by the jury or the court sitting as the trier of fact.'* American Auto. Ins. Co. v. Fulcher, 4 Cir., 1953, 201 F.2d 751, 756. *The question before us is, not what some other court has said in a different situation but what the facts of this case show."* (Emphasis supplied).

Due to the existence of a written leasing agreement between Hertz and General Valet whereby a limited and restricted delegation of authority to permit operation of a leased vehicle was clearly contemplated by the parties, the question for determination becomes what permission to operate did General Valet in fact either expressly or impliedly give to its employee, defendant Stevenson.

That this court is correct in interpreting paragraph 13 of the Truck Lease Service Agreement as being a limited delegation of authority from Hertz to General Valet to permit operation of a leased vehicle; in analogizing the legal import of such a relationship to a first permittee—second permittee type of situation; and in holding that the facts surrounding the use of the leased vehicle by defendant Stevenson must be developed is evidence by a case closely on point found by the court through independent research. In Liberty Mutual Insurance Co. v. United States Fidelity and Guaranty Co., D.Mont.1964, 232 F.Supp. 76, 80 the court, having before it a leasing agreement in which one Lee was the lessor; Kiewit, the lessee, and Everling, the employee driver of the lessee, and, having had the case submitted to it upon an agreed statement of facts—one of which was that the employee was driving

in the course and scope of his employment at the time of the accident, said:

"* * * It cannot be questioned that the use of the truck by Kiewit was with the permission of Lee. This is evidenced by the leasing agreement between them.

"[3] Kiewit is insured under the U.S.F. & G. Policy. The same is true of Everling. Under all the circumstances it is clear that Everling was driving the truck with the implied, if not express, permission of Lee, the named insured. The contract between Lee and Kiewit specifically provides that Kiewit shall hire and pay the wages of drivers, who will be under Kiewit's direction and control. Everling himself signed the truck rental agreement on behalf of Lee, the owner. There can be no doubt that it was contemplated that Everling in particular would drive the truck as an employee of Kiewit. No limiting provisions on the use of the truck appear in the rental agreement.

"[4] While a few cases have reached a contrary conclusion, '(T)he better rule * * * is that when a general permission is granted by the named insured to use a vehicle, and without any limitation by the named insured against a third person driving, the use of the vehicle by the first permittee is with the permission of the named insured, even though another is driving, *provided the use is to serve a purpose, benefit, or advantage of the* first permittee.' Butterfield v. Western Casualty and Surety Co., 1960, 83 Idaho 79, 357 P.2d 944, 947." (Emphasis supplied).

This then supports this court's conclusion that it remains in the instant case to be factually determined whether or not the actual use of the leased vehicle was at the time of the accident within the scope of the permission granted.

The motion of defendant Charlotte E. Grahe for summary judgment is hereby denied.