631 P.2d 133

**ARIZONA JOINT UNDERWRITING PLAN and Mutual Insurance Company of Arizona, Plaintiffs/Appellees,**

v.

**GLACIER GENERAL ASSURANCE COMPANY, Defendant/Appellant.**

No. 2 CA–CIV 3812.

Court of Appeals of Arizona, Division 2.

May 28, 1981.

Rehearing Denied July 2, 1981.

Chandler, Tullar, Udall & Redhair, by D. B. Udall, Tucson, for plaintiffs/appellees.

**352**

Lesher, Kimble & Rucker, P.C., by Robert O. Lesher, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Chief Judge.

Appellees, Mutual Insurance Company of Arizona (MICA) and Arizona Joint Underwriting Plan (AJUP), instituted an action against Glacier General Assurance Company (Glacier) seeking contribution to a judgment in a wrongful death action which had been paid by appellees. The case was tried to the court on a stipulated set of facts and the court took judicial notice of the two underlying files pertaining to the wrongful death action. Judgment was entered in favor of appellees in the amount of $100,000 plus one-half of the reasonable attorneys' fees expended by them in the investigation and defense of the wrongful death action. This appeal followed.

A wrongful death action was filed against Drs. Kartchner and Dean, their professional corporation, Pima Anesthesiologists, nurse Hayden, an employee of Pima Anesthesiologists, and others, for medical malpractice. A medical liability review panel found in favor of the plaintiff against Pima Anesthesiologists, Dr. Dean and nurse Hayden. An offer of judgment in the amount of $335,000 on behalf of Dean, Kartchner, Hayden and the professional corporation was accepted by the plaintiff and a joint and several judgment in the sum of $335,000 was entered against each defendant.

MICA had issued two policies of professional liability insurance, each with a limit of $100,000. One policy provided coverage for certain doctors involved in the wrongful death case, and the other named Pima Anesthesiologists and Hayden among the insureds. Glacier had issued a policy of liability insurance with limits of $100,000 which insured only Hayden. The AJUP policy, which covered all the defendants, provided excess professional liability coverage up to $1,000,000 above the warranted underlying insurance. It defined underlying insurance as "the policy or policies mentioned in the Insuring Agreement of this policy." The only policy listed was MICA.

The wrongful death judgment was satisfied by MICA and AJUP, the former paying $100,000 under each policy issued by it and the latter paying $135,000. Their complaint demanded that Glacier be ordered to pay to them $100,000, its policy limits, plus its proportionate share of costs and attorneys' fees. The trial court granted the relief sought plus reasonable attorneys' fees and costs for bringing this action.

The trial court expressly found that MICA had two policies in force, each for $100,000; that AJUP had an umbrella policy over both said policies in the amount of $1,000,000; and that Glacier had a policy of $100,000 on Hayden which "was primary coverage but equal to the MICA prime coverage on Nurse Hayden; . . ."

The Glacier policy contained the following exclusion:

"If other valid insurance exists at any time protecting against a loss covered by this policy, this policy shall be null and void with respect to said loss . . .; provided, however, that if the applicable limit of liability of such other valid insurance is not sufficient to protect the Insured against such loss, this policy shall apply, but only as excess insurance over such other valid insurance subject to the applicable limit of liability of this policy and not as contributing or pro-rata insurance."

The "other insurance" provision of the MICA policy provided:

"If the Insured has other valid and collectible insurance available to him, this insurance shall not apply unless and until the limits of liability of such other insurance have been exhausted."

■ Our review of the relevant contracts of insurance in this case leads us to the conclusion that the trial court was correct in ordering Glacier to pay its policy limits to appellees. All three policies insured Hayden. The interest, as well as the risk and subject matter of the policies, were identical as to her. Further, Glacier was bound by the offer of judgment which was accept-

ed on behalf of its insured, Hayden. It had notice of the underlying lawsuit, but chose not to participate in the defense of Hayden. The question of the underlying liability of Hayden was resolved by the judgment which was entered against her. Under the circumstances of this case, where all three insurers were liable in some degree to pay the judgment and only two insurers satisfied it, the parties wrongfully compelled to pay the loss are entitled to contribution from the one who paid nothing. See *Universal Underwriters Insurance Co. v. Dairyland Mutual Insurance Co.*, 102 Ariz. 518, 433 P.2d 966 (1967).

In order to understand the proportionate liability of the three insurers, a step-by-step description of the proper satisfaction of the underlying judgment is necessary. After MICA paid the $100,000 policy limits on its policy insuring the doctors only, a $235,000 judgment remained. Coverage remaining included the $100,000 MICA policy on Pima Anesthesiologists and Hayden, Glacier's $100,000 policy on Hayden and the AJUP excess policy. Turning first to the MICA policy, its "other insurance" clause provided that if other valid and collectible insurance existed, its insurance would not apply—unless and until the limits of the other policy were exhausted. This clause was neither an escape nor an excess clause, but has been called a "composite escape and excess" clause or a "contingent excess clause." *Underground Construction Co. v. Pacific Indemnity Co.*, 49 Cal.App.3d 62, 122 Cal.Rptr. 330 (1975); *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir.1971). It permits escape if the loss is less than any other insurance protection and provides excess insurance if its coverage exceeds the other valid insurance.

To properly ascertain the extent of MICA's coverage on its policy, then, the provisions of the Glacier policy, as the other existing primary insurance available to the injured plaintiff, must be examined. Glacier's "other insurance" clause provided that if other valid insurance existed, the policy would be null and void—provided, however, that it would be excess insurance if the limits of the other insurance were not sufficient to cover the loss. Although this clause was worded differently from the MICA "other insurance" clause, it is obvious that its effect is the same. Both clauses are of the "escape and excess" variety, and if both were given effect, neither policy would provide coverage.

These two clauses present a situation similar to that examined in *Harbor Insurance Co. v. United Services Automobile Association*, 114 Ariz. 58, 559 P.2d 178 (App.1976). In that case, we held that where two policies cover the same occurrence and both contain "other insurance" clauses, the excess insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable on a pro rata basis for the judgment. Since the MICA and Glacier exclusion provisions in effect mirrored each other and must be considered mutually repugnant, *Harbor* applies and both primary insurers were liable for pro rata shares of the remaining judgment. Since both policies had limits of $100,000, both insurers were liable for an equal share of the remaining $235,000. After both the MICA and Glacier policies have been exhausted, $35,000 would remain to be satisfied, and under the terms of its policy, AJUP would be responsible for this amount.

This conclusion is not inconsistent with the fact that the AJUP policy was excess only over the MICA policy. AJUP was liable for the excess of the total applicable limits of its underlying insurance, the MICA policy. This "underlying insurance" could not be calculated until MICA and Glacier had paid their pro rata shares as primary insurers. MICA exhausted its policy limits only after Glacier should have paid its $100,000 pro rata share. It was at this point, with $35,000 remaining unsatisfied on the judgment, that AJUP's excess liability began. This result most accurately accomplishes the total policy insuring intent of the three insurers. *See Allstate Insurance Co. v. Employers Liability Assurance Corp.*, supra.

354

Further, it would be a windfall to Glacier, which must be considered along with MICA as Hayden's primary insurers, to pay nothing merely because a fellow primary insurer had additional excess coverage. A similar conclusion was reached in *Oil Base Inc. v. Transport Indemnity Co.*, 143 Cal.App.2d 453, 299 P.2d 952 (1956), remittitur corrected, 148 Cal.App.2d 490, 306 P.2d 924 (1957).

■ As noted above, Glacier was also required to pay one-half of the costs of investigation and defense of the wrongful death lawsuit. This was error. Each insurer had an obligation to defend its insured. Where the obligation of each insurer to defend its insured is several, absent an agreement to that effect, there is no right to compel contribution to the costs of defense. *Thurston National Insurance Co. v. Zurich Insurance Co.*, 296 F.Supp. 619 (W.D.Okl.1968); *Transamerica Insurance Group v. Empire Mutual Ins. Co.*, 31 Conn.Sup. 235, 327 A.2d 734 (1974); *Maryland Casualty Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P.2d 931 (1967); *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967).

For the foregoing reasons, the judgment is modified to reflect that appellees are not entitled to recover from appellant the additional sum awarded by the trial court for costs of the defense of the underlying wrongful death lawsuit. In all other respects the judgment is affirmed.

HOWARD and BIRDSALL, JJ., concur.