**GUARANTY NATIONAL INSURANCE COMPANY, a Colorado corporation, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation; and Harbor Insurance Company, a California corporation, Defendants.**

No. CV–89–135–GF.

United States District Court,
D. Montana,
Great Falls Division.

Feb. 20, 1991.

Kenneth R. Dyrud, Church, Harris, Johnson & Williams, Great Falls, Mont., for Guaranty Nat. Ins. Co.

Neil E. Ugrin, Ugrin, Alexander, Zadick & Slovak, P.C., Great Falls, Mont., for American Motorists Ins. Co.

William Conklin, Conklin, Nybo, LeVeque & Murphy, Great Falls, Mont., for Harbor Ins. Co.

MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

BACKGROUND

The parties to this action, Guaranty National Insurance Company ("Guaranty") and American Motorists Insurance Company ("American"), provided motor vehicle liability coverage to a common insured for a third party personal injury claim which arose out of a vehicular accident. The liability insurance contract extant between Guaranty and the insured had a limit of liability of $25,000.00. The liability insurance contract extant between American and the insured, on the other hand, had a liability limit of $1,000,000.00. Guaranty concedes that the language of the policy it issued to the common insured had the effect of making the coverage provided by that policy "primary" in nature. The policy issued by American to the common insured contained an "other insurance" provision which operated to make the coverage provided by the American policy "excess" in nature.

Both of the policies provided the insurer had, not only a duty to indemnify, but a duty to provide the insured with a defense to any claim for damages to which the insurance applied. Pursuant to the duty imposed by the policy it issued to the common insured, Guaranty undertook the defense of the insured in the underlying personal injury suit which resulted from the referenced accident. Although there exists some dispute between the two insurers regarding what transpired with respect to a purported tender of the insured's defense by Guaranty to American, in point of fact, Guaranty ultimately provided a defense to the insured until the personal injury action was settled in May of 1988. Guaranty contributed $25,000, an amount representing its liability limit, to the settlement. American contributed $1,000,000, a sum representing its liability limit, to the settlement.[1]

Guaranty represents it expended over $90,000 in defense of the personal injury action. Guaranty instituted the present action in an effort to compel American and Harbor to reimburse it for their pro-rata share of the expenses incurred by Guaranty in defending their common insured in the underlying personal injury action. The issue presented by the parties' cross-motions for summary judgment calls upon the court to examine the rights and duties of several insurers who have provided a common insured liability insurance coverage for the same incident through separate liability insurance contracts.

The court has jurisdiction of this action based upon the diverse citizenship of the parties. 28 U.S.C. § 1332(a)(1). Consequently, the law of the forum state, Montana, determines the substantive rights and liabilities of the parties.

## DISCUSSION

The parties acknowledge the Supreme Court of the State of Montana has not specifically considered the issue of the allocation of defense costs between "primary" and "excess" insurers. Consequently, this court, sitting in diversity, must undertake to predict how the Montana Supreme Court would rule if confronted with this precise issue of law. *See, Molsbergen v. United States,* 757 F.2d 1016, 1020 (9th Cir.1985), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). Guaranty urges the court to recognize an equitable rule of apportionment which allows the defense costs to be allocated on a pro-rata basis, determined by the proportion each insurer's maximum coverage bears to the total available maximum coverage provided by all applicable policies. Guaranty relies primarily upon a decision previously rendered by this court in *American States Ins. Co. v. Angstman Motors, Inc.,* 343 F.Supp. 576 (D.Mont.1972). In *Angstman,* the Honorable James F. Battin was called upon to decide essentially the same issue which is now before this court. 343 F.Supp. at 586. Noticing the dearth of any decision by the Montana Supreme Court addressing the issue, Judge Battin held that regardless of the outcome of the underlying claim or the amount of judgment or settlement, each of the insurers must contribute its pro-rata share of the defense costs. 343 F.Supp. at 586–87.[2]

---

1. A third insurer, Harbor Insurance Company, provided excess insurance coverage to the insured above the $1,000,000 liability limit of the American Motorist policy up to $10,000,000. Harbor apparently contributed $125,000 to the settlement of the underlying personal injury claim.

2. In reaching his decision in *Angstman,* Judge Battin relied upon a prior decision of this court in *Liberty Mutual Ins. Co. v. United States Fidelity & Guaranty Co.,* 232 F.Supp. 76 (D.Mont. 1964). Speaking for the court in *Liberty Mutual,* the Honorable William Jamison observed the two general lines of authority which have evolved regarding the proper allocation of de-

fense expenses between two carriers who have insured the same risk and have both agreed to provide the insured with a defense. 232 F.Supp. at 84. Judge Jamison adopted, as more equitable, the rule recognizing that defense expenses should be pro-rated on the basis of the coverage afforded by the respective policies. *Id.* at 84.

It is appropriate to note that *Liberty Mutual* involved two primary insurers. In *Angstman,* on the other hand, the issue of allocation arose in the context of a "primary" insurer and an "excess" insurer. 343 F.Supp. at 587. As will be discussed in more detail, American Motorist contends this distinction proves critical in deter-

Characterizing the reasoning in *Angstman* as "critically flawed," American urges the court to seize this opportunity to retract the *Angstman* holding. Guaranty, on the other hand, urges the court to reaffirm the holding of *Angstman.*

■ Revisiting the issue of the proper allocation of defense costs between "primary" and "excess" insurers, I find nothing in the intervening decisional law of the State of Montana, or any other jurisdiction, which either compels, or persuades me, to retract the *Liberty Mutual/Angstman* rule in favor of a rule which places full responsibility for the costs of defense upon the primary insurer. The rationale expressed by the court in *Liberty Mutual* and extended in *Angstman* is both pragmatic and equitable.

The enduring conflict between primary and excess insurers as to whether an excess insurer should contribute to the cost of the defense of claims which potentially will, or actually do result in the exhaustion of the limits of the primary insurance policy has spawned significant debate among the courts. A traditional view evolved which recognizes the excess insurer is not obligated to contribute to the cost of defending a common insured, regardless of the fact the ultimate recovery exceeds the indemnity limits of the primary insurance policy. *See, e.g., Nordby v. Atlantic Mutual Ins. Co.,* 329 N.W.2d 820 (Minn.1983); *Arizona Joint Underwriting Plan v. Glacier General Assurance Co.,* 129 Ariz. 351, 631 P.2d 133, 136 (Ariz.Crt.App.1981); *Signal Companies v. Harbor Ins. Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980) (*en banc* ); *Occidental Fire & Casualty Co. v. Underwriters at Lloyd's, London,* 19 Ill.App.3d 265, 311 N.E.2d 330 (1974). Those courts which have endorsed

the traditional view generally emphasize that the obligation to defend the common insured is an obligation which is several in nature, as between the primary and excess insurer. *See, e.g., Arizona Joint Underwriting Plan v. Glacier General Assurance Co.,* 631 P.2d at 136.[3] This general observation having been made, it must be emphasized that the holding in any particular case addressing the issue of allocation of defense costs between primary and excess insurers must be considered in light of the particular facts of each case and the various policies involved.

A second school of thought has developed which endorses an equitable pro-ration of defense costs among primary and excess insurers; a view based upon recognition of the fact the excess insurer has an equitable duty to share in the defense costs where the claim exceeds the primary coverage. *See, e.g., American Excess Insurance Co. v. MGM Grand Hotels, Inc.,* 729 P.2d 1352 (Nev.1986); *Celina Mutual Ins. Co. v. Citizens Ins. Co.,* 133 Mich.App. 655, 349 N.W.2d 547 (1984); *Sanabria v. American Home Assurance Co.,* 113 A.D.2d 193, 495 N.Y.S.2d 533 (1985), *rev'd on other grounds,* 68 N.Y.2d 866, 508 N.Y.S.2d 416, 501 N.E.2d 24 (1986). *See also, American Fidelity Ins. Co. v. Employees Mutual Casualty Co.,* 3 Kan.App.2d 245, 593 P.2d 14 (1979), *compare with, Ins. Co. of North America v. Medical Protective Co.,* 570 F.Supp. 964 (D.Kans.1983).

In *Liberty Mutual* and *Angstman,* this court predicted Montana would adopt an equitable rule of apportionment calling for the pro-ration of defense costs between primary and excess insurers. While American disparages the prediction, it presents

mining the propriety of allocation on a pro-rata basis.

**3.** *See, e.g., Signal Companies, Inc. v. Harbor Ins. Co.,* 612 P.2d at 899. In *Signal Companies, Inc.,* the California Supreme Court held that the excess carrier was not obligated to contribute to the defense expenses since the expenses were incurred before the primary coverage was exhausted and before any request was made to the expressly designated excess carrier for its participation in the defense. The court, however,

expressly declined to "formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which may affect the insured of the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made and the relation of the insured to the insurers." The court distinguished *Aetna Casualty & Surety Co. v. Certain Underwriters,* 56 Cal.App.3d 791, 129 Cal.Rptr. 47 (1976).

no persuasive argument which compels retraction of the prediction.[4]

American places particular significance upon the fact the provision of the Guaranty policy which obligated Guaranty to provide a defense to the common insured stated in part: "or [our] payment of the liability insurance limit ends our duty to defend or settle." Because payment of Guaranty's indemnity limits occurred at the conclusion of the underlying case, its duty to defend, American submits, continued until payment and resolution of the underlying case; events which occurred simultaneously. Consequently, American argues its duty to defend the common insured was not "triggered".[5]

Concededly, the "other insurance" clause in the American policy operated to make Guaranty the "primary" insurer with respect to the duty to indemnify the common insured. The "other insurance" clause does not, however, expressly limit the duty of American to defend the common insured. Nonetheless, American implicitly suggests that the "other insurance" clause must be read as operating to place a limitation both upon its duty to indemnify and defend. From this premise, American argues its obligation to defend the common insured did not arise until Guaranty actually paid the limits of its liability insurance contract in settlement of the underlying claim against the common insured. American, of course, relies upon the terms of the provisions of the Guaranty policy relating to the defense of the common insured which provided that Guaranty's duty to defend would end upon "payment" to the full extent of the liability limits of the Guaranty policy.

■ It is uniformly recognized that the covenant to defend is "broader" than and "independent" of the covenant to indemnify. *See, St. Paul Fire & Marine Ins. Co. v. Thompson,* 150 Mont. 182, 188–189, 433 P.2d 795, 798–799 (1967). *See also, CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986); *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E.2d 374, 377 (1986); *Colon v. Aetna Life & Casualty Ins. Co.,* 66 N.Y.2d 6, 494 N.Y.S.2d 688, 484 N.E.2d 1040 (1985); *Reis v. Aetna Casualty & Surety Co.,* 69 Ill.App.3d 777, 784, 25 Ill.Dec. 824, 829, 387 N.E.2d 700, 705 (1978). Because the duty is contractual in nature, it obviously runs to the insured. Where more than one insurer has obligated itself to defend a common insured, the duty to defend coexists, unless by express policy language, a particular insurer's obligation to defend is contingent in nature. *See, e.g., Lujan v. Gonzalez,* 84 N.M. 229, 233, 501 P.2d 673, 677 (App.1972); *see also, Hartford Accident & Indemnity Co. v. Continental National American Ins. Cos.,* 861 F.2d 1184, 1185 (9th Cir.1988) (construing California law).

The respective obligations, as between several insurers who have covered the same risk do not arise out of contract, but are based upon equitable principles "designed to accomplish ultimate justice in the bearing of a specific burden". *See, e.g., Signal Companies v. Harbor Ins. Co.,* 612 P.2d at 895 (*quoting, American Auto Ins. Co. v. Seaboard Surety Co.,* 155 Cal. App.2d 192, 195–96, 318 P.2d 84, 86

4. The court does find it necessary to elaborate upon the rule announced in *Liberty Mutual* and expanded in *Angstman* for the limited purpose of acknowledging that the proration of defense costs is to be based upon the amount of money actually paid by the primary and excess insurers in satisfaction of the claim advanced against the common insured in the present case. In *Angstman,* the declaratory judgment action was filed prior to any settlement of the underlying claim being effected. In the case at bar, however, both the primary and excess insurers have contributed an identifiable sum in satisfaction of the claim made against the common insured. Consequently, the pro-ration is appropriately based upon the actual dollars contributed in settlement of the claim against the common insured, as opposed to the liability limits set forth in the respective policies.

5. American relies upon the "other insurance" clause contained in the policy at issue to the common insured, which provided:

If there is other valid and collectible insurance available to the insured against the loss covered under this policy, except insurance purchased by the insured to apply in excess of this insurance, the insurance under this policy shall be excess of such other valid and collectible insurance,....

(1957)).[6] Recognition of this fact compels the adoption of a rule which calls for a pro-rata allocation of defense costs between a primary and excess insurer, since it strikes an equitable balance between the insurers. Additionally, I find a rule of pro-rata allocation serves the best interests of the insured, since it alleviates a potential obstacle to an effective defense by tending to ensure that the insured will not be cast adrift as a result of the insurers' inability to agree upon their respective responsibilities.

The text of the American insurance policy pertaining to the provision of a defense to the common insured provided:

> ... [T]he Company shall have the right and duty to defend any suit against the insured ... but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgment or settlements.

The obligation to defend created by this express language of the American policy is straightforward. The policy does not make the duty to defend contingent upon exhaustion of the limits of "primary" coverage. Nor does the express language of American's policy require its consent to the incurrence of costs before it might be subjected to pro-ration of those costs. *See, e.g., Signal Companies, Inc. v. Harbor Ins. Co.,* 612 P.2d at 895.

Considering the language of the respective policies and the ultimate monies contributed by the several insurers to settlement of the claim advanced against the common insured, the court finds that equity compels a pro-ration of defense costs among the several insurers based upon the amounts contributed to the ultimate settlement of the claim. The court's holding is consistent with its prior holdings in *Liberty Mutual* and *Angstman,* differing only to the extent pro-ration of defense costs between primary and excess insurers is to be in proportion to the amount each respective insurer contributed to satisfaction of the claim advanced against the common insured.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the motion for partial summary judgment of the defendant, American Motorist Insurance Company, be, and the same hereby is, DENIED, and, in accordance with the foregoing memorandum, partial summary judgment is GRANTED in favor of the plaintiff, Guaranty National Insurance Company.

---

**6.** In pressing its argument, American relies heavily upon the Ninth Circuit Court of Appeals' decision in *Hartford Accident & Indemnity Co. v. Continental National American Ins. Cos.,* 861 F.2d 1184. American views the decision in *Hartford* as having effectively overruled the decision of this court in *Angstman,* and contends the decision controls disposition of the issue now before the court. American's reliance upon *Hartford* as dispositive of the issue of allocation of defense costs between primary and excess insurers under Montana law is misplaced. First, *Hartford* was a diversity action in which the court was called upon to interpret and apply the law of California. 861 F.2d at 1185. The present controversy, however, calls upon this court, sitting in diversity, to interpret and apply the substantive law of Montana. Second, American reads the decision in *Hartford* in isolation of both the facts upon which that decision was premised, and the decisional law of the State of California. The *Hartford* decision is most certainly instructive, as it interprets the law of California, the jurisdiction with the most well-developed body of case law imposing an equitable duty upon excess insurers to share the burden of defending claims that exceed the limits of the primary insurance coverage. *See, e.g., Aetna Casualty & Surety Co. v. Certain Underwriters of Lloyds of London,* 56 Cal.App.3d 791, 129 Cal.Rptr. 47 (2nd Dist.1976); *Signal Companies v. Harbor Ins. Co.,* 27 Cal.3d 359, 612 P.2d 889 (1980); *Pacific Indemnity v. Firemans Fund Ins. Co.,* 175 Cal.App.3d 1191, 223 Cal.Rptr. 312, (2nd Dist.1985). The California Supreme Court, however, expressly declined to formulate "a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made and the relation of the insured to the insurers." *Signal Companies, Inc. v. Harbor Ins. Co.,* 612 P.2d at 895. The policies at issue in *Hartford,* as well as the relation between the several insurers, counseled the decision reached by the Ninth Circuit Court of Appeals. Those same factors are absent in the present case.

IT IS FURTHER ORDERED that the plaintiff's motion for partial summary judgment upon the issue of prejudgment interest is taken under advisement.