815 P.2d 403

**FREMONT INDEMNITY COMPANY,
Plaintiff/Appellant,**

v.

**NEW ENGLAND REINSURANCE COM-
PANY, a foreign corporation, Defen-
dant/Appellee.**

**No. CV–90–0186–PR.**

Supreme Court of Arizona,
En Banc.

July 23, 1991.

Bury, Moeller, Humphrey & O'Meara by
Marshall Humphrey III, Tucson, for plain-
tiff/appellant.

Browder & Kenney, P.C. by Robert W.
Browder, Phoenix, for defendant/appellee.

## OPINION

CORCORAN, Justice.

In this case we must settle another con-
flict between two separate insurance poli-
cies containing similar "other insurance"
provisions. Claims under each policy arise
from the same alleged incident of legal
malpractice. New England Reinsurance
Company petitions for review of the court
of appeals' decision holding that Fremont
Indemnity Company's policy excludes cov-
erage for the conduct in question. 165
Ariz. 521, 799 P.2d 862.

We granted review pursuant to rule 23, Arizona Rules of Civil Appellate Procedure, to determine whether language in both policies may be construed to allow only one insurer to benefit by the fortuitous existence of the other insurer's coverage. Our decision turns on whether the terms and conditions of both policies invoke the rules governing conflicting insurance clauses, and not whether policy provisions are set forth in a clear and unambiguous fashion. Therefore, we decline New England's invitation to examine Fremont's policy for inherent inconsistencies or ambiguities.

Because we believe that the competing policies, when read in their entirety, contain mutually repugnant "other insurance" clauses, we vacate the court of appeals' decision and affirm the trial court's ruling apportioning primary coverage on a pro rata basis. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 12–120.24 and 12–1837.

### Factual and Procedural History

In May 1985, the Insured, an attorney, was sued by a former client seeking damages for legal malpractice allegedly committed in 1982. The conduct at issue was covered by two "claims made" professional liability policies:[1] (1) a policy issued by New England to the law firm that employed Insured in 1982; and (2) a policy issued by Fremont to the law firm in which Insured became a partner after 1982. Each policy provided $2,000,000 in coverage and was in effect when the Insured sought coverage for the alleged malpractice. New England's policy period ran for a one-year period beginning October 1984, and Fremont's policy was in effect from November 1984 to November 1985.

New England denied coverage, but Fremont agreed to defend Insured with a reservation of rights. After settling the claim for $70,000, Fremont agreed to pay the $9,000 difference between the deductibles required under each policy. Because the New England policy contains a $10,000 deductible, Fremont apparently believed it was liable for the first $10,000 of the settlement, subject to its own $1,000 deductible. Fremont also agreed, without prejudice to its own claim of no coverage, to share one-half of the remaining balance of $61,000 with New England. New England agreed to pay one-half of the defense costs.

Fremont then sued New England, arguing that its liability is limited to the difference between the New England and Fremont deductibles and, pursuant to an "other insurance" provision, the excess over the coverage of the New England policy. Because Fremont already had paid the $9,000 difference in deductibles and New England's policy limit exceeds the amount of the settlement, Fremont claimed New England is liable for the entire $61,000.

After hearing cross-motions for summary judgment, the trial court found that Fremont's policy is ambiguous concerning coverage and that the "other insurance" provisions of each policy are mutually repugnant. The trial court therefore held that each policy provides primary coverage on a pro rata basis. Because both policies provide the same amount of coverage, each insurer was ordered to pay one-half of the settlement after required deductibles and one-half of the defense costs.

A divided court of appeals reversed, finding that the Fremont policy is not ambiguous and excludes liability except for Fremont's share of the cost of the defense and the deductible required by the New England policy. Judge Livermore dissented because he believed that the policies contain mutually repugnant excess clauses.

### Discussion

1. *Other Insurance Clauses and Mutual Repugnancy*

"Other insurance" clauses seek "to limit or eliminate coverage under the policy in the event the insured has other insurance available." A. Windt, *Insurance Claims*

---

**1.** "A 'claims made' policy is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period." *Chamberlin v. Smith,* 72 Cal. App.3d 835, 845 n. 5, 140 Cal.Rptr. 493, 498–99 n. 5 (1977).

*and Disputes: Representation of Insurance Companies and Insureds* § 7.01, at 386 (2d ed. 1988). In *State Farm Mut. Auto. Ins. Co. v. Bogart*, we mentioned that "other insurance" clauses fall into 3 general categories: (1) excess clauses, which provide coverage only for amounts due after all other available insurance is exhausted; (2) pro rata clauses, limiting liability to the proportion that the insurer's policy limit bears to the aggregate of other available limits; and (3) escape clauses, which state that an otherwise applicable policy will afford no coverage at all if other insurance is available. 149 Ariz. 145, 147, 717 P.2d 449, 451 (1986).

■ Assuming the insured has access to additional coverage, uncontested "other insurance" provisions are enforced and reduce the insurer's liability accordingly. *See, e.g., Union Ins. Co. v. Iowa Hardware Mut. Ins. Co.*, 175 N.W.2d 413, 415 (Iowa 1970) (standing alone, "other insurance" provisions present no problem and are given effect). When more than one policy contains an "other insurance" provision, however, courts must resolve the resulting battle of semantics over which clause, if any, will be given effect over the other. To do this, courts must ask whether the competing "other insurance" provision is contradictory and, if so, how mutually repugnant provisions should be resolved. *See* Windt, § 7.01, at 387–88.

Arizona follows the general rule of prorating the risk between contradictory "other insurance" provisions. *Bogart*, 149 Ariz. at 148, 717 P.2d at 452; 8A J. Appleman, *Insurance Law and Practice* § 4909, at 396 (rev. ed. 1981). For instance, in *Harbor Ins. Co. v. United Services Auto. Ass'n*, the Arizona Court of Appeals held that "where two policies cover the same occurrence and both contain 'other insurance' clauses, the [other] insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable for a pro rata share of the settlement or

judgment." 114 Ariz. 58, 63, 559 P.2d 178, 183 (App.1976). This court later explained that no other rule is possible because, "if a court were to give literal effect to each of the [other insurance] clauses, each policy would be cancelled out...." *Bogart*, 149 Ariz. at 148, 717 P.2d at 452.[2] Further, we simply cannot solve the circular riddle caused by conflicting clauses "by picking up one policy, and reading it with the result which would be opposite to that reached if the other policy were first in order." *Id.* at 149, 717 P.2d at 453.

### 2. *Interpretation*

■ In this case, a divided court of appeals declined to prorate liability because it believed that the Fremont policy, unlike the New England policy, contains an unambiguous exception to coverage in addition to an "other insurance" provision. This alleged exception in the Fremont policy is found in Insuring Agreement III and states:

> This policy applies to acts, errors, omissions or personal injuries which occur anywhere in the world:
>
> . . . .
>
> (B) prior to the effective date of the Policy, provided that:
>
> . . . .
>
> (2) there is no other valid and collectible insurance available to the Insured for any such prior act, error, omission or personal injury....

After concluding that the terms and conditions of Fremont's policy are clear and unambiguous, the majority elected to enforce Fremont's Insuring Agreement III before giving effect to the "other insurance" provision contained in the New England policy, thereby relieving Fremont of its obligation to provide primary coverage.

In support of its reasoning, the court of appeals cited *Chamberlin v. Smith*, 72 Cal. App.3d 835, 140 Cal.Rptr. 493 (1977), in which the California Court of Appeal refused to prorate malpractice liability be-

---

**2.** "This result occurs because the 'other insurance' clauses are triggered only when the other insurance is 'available' or 'collectible.' Before one reads the other insurance clause in the second policy that policy is 'available,' so that the clause in the policy being read is triggered and the first policy becomes 'unavailable.'" *Bogart*, 149 Ariz. at 148 n. 1, 717 P.2d at 452 n. 1.

tween two competing insurance companies that placed "other insurance" clauses in the conditions sections of their respective policies. One insurer was required to bear the entire loss because the other insurer included an additional "other insurance" clause in its insuring agreements. *Id.* at 847–50, 140 Cal.Rptr. at 500–02. According to the court in *Chamberlin,* this second "other insurance" clause operated as "an exception from coverage," regardless of the existence of "other insurance" language in the competing policy.[3] *Id.*

We disagree with the majority's conclusion and its reliance on *Chamberlin* for two important reasons. First, Insuring Agreement III of Fremont's policy contains an "escape from" rather than an "exception to" liability. By definition, an exception or exclusion provides that there is no coverage regardless of the existence of other insurance. *See, e.g., Industrial Indem. Co. v. Goettl,* 138 Ariz. 315, 318, 674 P.2d 869, 872 (App.1983) (exclusion is intended to negate all coverage for specific injuries or conduct). An escape clause, in contrast, provides that "a policy which would otherwise cover the loss will afford no coverage at all in the event that there is other insurance available." *Bogart,* 149 Ariz. at 147, 717 P.2d at 451; *see also* Appleman, § 4910, at 457.

■ Thus, Fremont's alleged exception is actually a textbook escape clause, and we cannot agree with the theory implied in *Chamberlin* that such a clause is transformed into an exception simply because of its location in an insuring agreement as opposed to another portion of a policy. *See Sifers v. General Marine Catering Co.,* 892 F.2d 386, 393 (court accurately characterized a clause permitting the denial of coverage as an escape clause), *modified on other grounds,* 897 F.2d 1288 (5th Cir.1990); *Aid Ins. Co. v. United Fire & Cas. Co.,* 445 N.W.2d 767, 770 (Iowa 1989) (a clause excluding coverage unless other insurance does not exist is just as

much an escape clause as one that provides coverage unless other insurance does exist). As a general rule, insurers cannot gain an advantage merely by rearranging "other insurance" provisions. Windt, § 704, at 404–05 n. 69.

Second, we agree with Judge Livermore's dissent that the Fremont and New England policies contain mutually repugnant "other insurance" clauses. To discern the actual effect of some policies, we cannot read "other insurance" clauses in isolation. The Fremont policy, for example, contains not one, but two "other insurance" clauses, and we must analyze them together in order to read the policy as a whole and "give a reasonable and harmonious meaning and effect to all its provisions." *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 536, 647 P.2d 1127, 1134 (quoting *Federal Ins. Co. v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 139, 547 P.2d 1050, 1053 (1976)), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982).

■ The escape clause in Fremont's Insuring Agreement III, therefore, must be read in conjunction with the "other insurance" language contained in Fremont's Condition II, which states:

> [W]ith respect to professional services rendered prior to the effective date of this Policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limit of liability of this Policy exceeds the sum of the applicable limit of liability of all such other insurance.

This excerpt from Condition II is properly defined as an excess clause, and provides coverage only after all other available insurance has been exhausted. *See Bogart,* 149 Ariz. at 147, 717 P.2d at 451. When coupled, Insuring Agreement III and Condition II resemble a composite escape and excess clause, sometimes referred to as a

---

**3.** The court also reasoned that competing "other insurance" clauses should not be reconciled if the "error or omission occurs during the life of one policy, and the claim is made during the life of another." *Chamberlin,* 72 Cal.App.3d at 848,

140 Cal.Rptr. at 500–01. The present dispute, however, does not involve *successive* attorney malpractice policies, and neither the Fremont policy nor the New England policy was in effect at the time of Insured's alleged malpractice.

contingent excess clause. *See Arizona Joint Underwriting Plan v. Glacier Gen. Assur. Co.,* 129 Ariz. 351, 353, 631 P.2d 133, 135 (App.1981). The gist of the hybrid escape-excess clause is to permit escape if the loss is less than any other insurance protection and to provide excess insurance if its coverage exceeds the other valid insurance. *Glacier,* 129 Ariz. at 353, 631 P.2d at 135; Appleman, § 4910, at 457.

Careful inspection of the New England policy reveals only one relevant "other insurance" clause.[4] Condition B of the New England policy provides:

> B. Other Insurance: This policy shall, subject to the terms, conditions and limitations of this insurance, be in excess of any other valid and collectible insurance available to the Insured, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided in this policy.

This condition, like Condition II in the Fremont policy, is a true excess clause designed to provide coverage only for the liability above the maximum coverage of all other available insurance.

Although a combined escape-excess clause and a true excess clause may not automatically cancel themselves out, we believe such clauses are sufficiently repugnant to require proration. *See Bogart,* 149 Ariz. at 149, 717 P.2d at 553 (an excess-escape clause and a true excess clause are mutually repugnant); *Travelers Ins. Co. v. Lexington Ins. Co.,* 478 So.2d 363 (Fla.App. 1985) (same); *see also Union Ins.,* 175 N.W.2d at 418 (a conflict exists if a policy contains a provision reasonably subject to a construction that it conflicts with a provision in other concurrent insurance). The purpose of each is to render coverage sec-

ondary to that of any other policy and, in the event such "other insurance" covers the entire loss, eliminate liability altogether. In terms of effect, then, Fremont's composite escape-excess clause and New England's true excess clause are indistinguishable. The combined escape-excess clause simply expresses what the true excess clause implies—no coverage if other insurance provides adequate protection, but excess coverage if other insurance is insufficient. *See* Appleman, § 4906, at 351 (an escape clause may act as an excess clause if couched in form as an excess-escape provision).

By inquiring whether the terms and conditions of the Fremont policy are sufficiently clear and unambiguous to be enforced as written, the majority in the court of appeals misses the mark. The critical point is that both policies, by virtue of their respective "other insurance" provisions, provide the same degree of coverage if other available insurance exists. When pitted against each other, the policies promote a circuitous debate in which each insurer, claiming that its policy must be read first, refuses to pay at all.[5]

Because nothing in the record compels a finding that one "claims made" policy should be favored over the other without resort to arbitrary criteria, we are placed in the unenvious position of having to untie a virtual "Gordian knot" of insurance coverage. Following the advice of Alexander the Great, we believe that the best way out of such a predicament is simply to draw a sword and cut the knot. This result does not: (1) arbitrarily assign an order of priority to the policies; (2) deprive the Insured of any coverage; (3) give a windfall to one insurer at the expense of another; (4) encourage litigation that is ultimately detrimental to the insurance-buying public; or (5) delay settlements. *Werley v. United*

4. We note that Insuring Clause A of the New England policy contains a provision similar to the escape clause in Fremont's Insuring Agreement III. New England's escape clause, however, applies only if there is a *"prior* policy or policies which provide insurance." (Emphasis added.) Because the inception date of the New England policy precedes that of the Fremont policy, the escape clause in Insuring Clause A is inapplicable.

5. If we read Fremont's policy first, we must find it inapplicable because its escape device is triggered by the New England policy, making New England the sole primary carrier. However, if we read the New England policy first, its excess provision is triggered by the existence of the Fremont policy. New England would then escape liability because the limits of the Fremont policy exceed the amount of the loss, thereby negating the need for excess coverage.

 

*Services Auto. Ass'n,* 498 P.2d 112, 119 (Alaska 1972). Our decision also comports with the "growing weight of authority" construing escape devices as mutually repugnant to general excess clauses. *See Bogart,* 149 Ariz. at 149, 717 P.2d at 553, *citing State Farm Mut. Auto. Ins. Co. v. United States Fidelity & Guar. Co.,* 490 F.2d 407, 411 (4th Cir.1974).[6] Accordingly, we hold that both Fremont and New England are obligated to pay their pro rata share of the settlement pursuant to the mutual repugnancy rules explained in *Bogart.*

### Disposition

Because we find no compelling reason to favor one policy over the other, we vacate the court of appeals' opinion and affirm the trial court's decision to prorate the loss, after required deductibles and equal shares of defense costs, on the basis of one-half to Fremont and one-half to New England.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

---

6. *See also Werley,* 498 P.2d at 119; *Indiana Ins. Co. v. Federated Mut. Ins. Co.,* 415 N.E.2d 80, 86 (Ind.1981); *Aid Ins. Co.,* 445 N.W.2d at 769–70; *C.C. Housing Corp. v. Ryder Truck Rental,* 106 N.M. 577, 581, 746 P.2d 1109, 1113 (1987); *Windt,* § 7.01, at 390.