**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY, a foreign corporation; et al.,<br><br>Defendants - Appellees. | No. 10-16859<br><br>D.C. No. 2:07-cv-02237-NVW<br><br>MEMORANDUM[*] |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY, a foreign corporation and OHIO CASUALTY GROUP, a foreign corporation, AKA Ohio | No. 10-17436<br><br>D.C. No. 2:07-cv-02237-NVW |

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Casualty Insurance Company,

                Defendants - Appellees,

  and

EMPLOYERS MUTUAL CASUALTY
COMPANY, a foreign corporation, AKA
Employers Mutual Casualty Insurance
Company; et al.,

                Defendants.

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted December 5, 2011
San Francisco, California

Before: ALARCÓN, CALLAHAN, and N.R. SMITH, Circuit Judges.

American Family Mutual Insurance Company ("American Family") appeals

from the United States District Court for the District of Arizona's grant of

summary judgment in favor of Ohio Casualty Group ("Ohio Casualty") and

National Fire & Marine Insurance Company ("National Fire") (collectively

"Appellee Insurers"). American Family contends that the district court erred in

ruling that the Appellee Insurers' policies provided only excess coverage to George

F. Tibsherany Development Corporation ("GFTDC"), the general contractor for a

2

condominium project, as an additional insured.  American Family also asserts that the district court erred in concluding that GFTDC's tender failed to provide Ohio Casualty with sufficient information to determine whether coverage existed under the policy it had issued to a subcontractor.  We affirm because we are persuaded that the Appellee Insurers' policies provided excess coverage over American Family's primary coverage for GFTDC.  Because of this conclusion, we do not address the sufficiency of GFTDC's tender to Ohio Casualty.

# I

GFTDC, the general contractor for the Astragal Luxury Villas condominium project ("Astragal Project") in Maricopa County, Arizona, contracted with American Family to provide it with Commercial General Liability ("CGL") insurance coverage for three policy years that spanned the period of October 11, 2000 to October 11, 2003.

In connection with the Astragal Project, GFTDC entered into written agreements with numerous subcontractors, including the following entities: Trussman, Inc. ("Trussman"), Century Roofing, Inc. ("Century Roofing"), Diversified Drywall, Inc. ("Diversified Drywall"), Faith Plumbing, Inc. ("Faith Plumbing"), and R.T. Brown Mechanical, Inc. ("R.T. Brown") (collectively "Astragal Subcontractors").  These agreements state that "Subcontractor must

3

maintain the following insurance coverages" and include a provision requiring each subcontractor to "cause all insurers to name the General Contractor as an additional insured on all insurance policies required by this section."

Ohio Casualty issued CGL coverage to Trussman, and National Fire issued CGL policies to Century Roofing, Diversified Drywall, Faith Plumbing, and R.T. Brown. The Ohio Casualty and National Fire policies include blanket additional insured endorsements that provided coverage to GFTDC. The Astragal Subcontractors' policies also contained "other insurance" provisions that purport to make their coverage excess over other insurance available to GFTDC.

The additional insured endorsement in the Ohio Casualty policy provides:

> Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis.

All of the subject National Fire policies contain a blanket additional insured endorsement, which states:

> A. Who Is An Insured (Section II) is amended to include as an insured the person or organization (called "additional insured") shown in the Schedule but only with respect to liability arising out of:
>
> 1. Your ongoing operations performed for the additional insured(s) at the location designated above; or

4

2. Acts or omissions of the additional insured(s) in connection with their general supervision of such operations.

A separate "other insurance" provision that applies to the policy as a whole states:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited, as follows:
>
> > This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, or on any other basis unless the other insurance is issued to the Named Insured shown in the Declarations of this Coverage part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declaration of this Coverage Part. . . .

The National Fire policies explains the use of the terms "named insured" and "additional insureds" as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . .
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

The Astragal Condominium Unit Owners Association filed a complaint in an Arizona Superior Court asserting construction defect claims against GFTDC and the developer for the Astragal Project. GFTDC and the developer filed a third-party complaint against several of the Astragal Subcontractors. American Family

5

defended GFTDC and paid the amount of the settlement in the state court litigation.

Thereafter, American Family filed this litigation in the District of Arizona, asserting equitable contribution claims in a declaratory relief action against numerous insurance companies for the Astragal Subcontractors. The named defendants included Ohio Casualty and National Fire.

On July 23, 2010, the district court granted summary judgment in favor of Ohio Casualty and National Fire. The district court concluded that the coverage available to GFTDC under both Ohio Casualty and National Fire's policies was excess over American Family's coverage. The district court also concluded that Ohio Casualty and National Fire's excess coverage was not triggered because, in settling the *Astragal* litigation, American Family did not exhaust its policy limits. In denying Ohio Casualty's motion for summary judgment on the additional ground that GFTDC's tender was insufficient, the district court concluded that "GFTDC failed to provide Ohio Casualty with sufficient information for Ohio Casualty to determine whether GFTDC was an additional insured under Trussman's policy and whether the suit was potentially within the policy's coverage."

On August 23, 2010, American Family filed a timely first notice of appeal to this Court. The District Court for the District of Arizona had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

American Family maintains that the district court erred in granting summary judgment in favor of Ohio Casualty and National Fire. It argues that their policies provided primary coverage not only to the Astragal Subcontractors to whom the policies were issued, but also to GFTDC, and that the "other insurance" provisions in the parties' respective policies are mutually repugnant and unenforceable. Accordingly, American Family argues that Appellee Insurers should share the defense and indemnity costs with American Family.

We review de novo a grant of summary judgment on cross-motions for summary judgment. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008); *Nat'l Union Fire Ins. Co. v. Eng'g-Sci., Inc.*, 884 F.2d 1208, 1210 (9th Cir. 1989). We may affirm for any reason supported by the record. *Travelers Prop.*, 546 F.3d at 1145.

"This court reviews de novo the district court's interpretation of insurance policies, which present mixed questions of law and fact." *Horvatin v. Allstate Life Ins. Co.*, 848 F.2d 1012, 1013 (9th Cir. 1988). Because this litigation is in federal

court on the basis of diversity jurisdiction, the law of Arizona applies. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Approximately 35 years ago, in the context of examining "other insurance" clauses in a general homeowner's liability policy and a policy that applied specifically to motor vehicle accidents, the Arizona Court of Appeals held that "where two policies cover the same occurrence and both contain 'other insurance' clauses, the excess insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable for a pro rate share of the settlement or judgment." *Harbor Ins. Co. v. United Servs. Auto. Ass'n*, 559 P.2d 178, 183 (Ariz. Ct. App. 1976).

Two decades ago, the Arizona Supreme Court revisited the analytical framework to be used in examining potentially competing "other insurance" provisions. It explained:

> When more than one policy contains an "other insurance" provision . . . , courts must resolve the resulting battle of semantics over which clause, if any, will be given effect over the other. To do this, courts must ask whether the competing "other insurance" provision is contradictory and, if so, how mutually repugnant provisions should be resolved.

*Fremont Indem. Co. v. New England Reins. Co.*, 815 P.2d 403, 405 (Ariz. 1991). The Arizona Supreme Court has also explained that the only viable answer to the

8

problem of mutually repugnant "other insurance" provisions is a rule requiring that the clauses be disregarded and each insurer made liable for a pro rata share of the settlement or judgment: "No other rule is possible, since if a court were to give literal effect to each of the excess clauses, each policy would be cancelled out and the final result would depend upon which policy was read first." *State Farm Mut. Auto. Ins. Co. v. Bogart*, 717 P.2d 449, 452 (Ariz. 1986), *superseded by statute on other grounds as recognized* in *Consolidated Enters., Inc. v. Schwindt*, 831 P.2d 828, 830 (Ariz. Ct. App. 1991).

Here, the district court recognized, and the parties do not dispute, that the Arizona Court of Appeals' 2007 decision in *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610 (Ariz. Ct. App. 2007), is central to the resolution of this dispute. Very much like the issue presented in this matter, *Regal Homes* involved a dispute over whether the insurers of a general contractor involved in construction-defect litigation were entitled to reimbursement for defense costs and indemnity payments from a subcontractor's insurer.

**A**

The CGL policies American Family issued to GFTDC include an "other insurance" provision that is quite similar to the "other insurance" provision in the general contractor's policy with Auto-Owners Insurance Company, which the

9

Arizona Court of Appeals determined provided "direct primary CGL coverage" to the general contractor in *Regal Homes*. *Id.* at 618. The American Family policy language in this matter is quite dissimilar from the "other insurance" provision in the general contractor's primary policy with Zurich Companies in *Regal Homes*. Read together, the relevant portions of the general contractor's policy with Zurich and the additional insured endorsement language in the subcontractor's policy with a different insurer could not be given effect, because the Zurich policy's "other insurance" provision stated that it was excess over *any* other insurance available to the general contractor as an additional insured. *Id.* at 619. The Arizona Court of Appeals explained that the two carriers "cannot simultaneously be excess carriers" of the general contractor for the covered period, "while neither serves as a primary carrier of [the general contractor]." *Id.*

The "[a]ny other *primary* insurance" excess provision in the American Family policy is the point on which the resolution of American Family's appeal turns in this matter. Unlike the Zurich policy in *Regal Homes*, which purported to render the coverage under the general contractor's direct primary CGL coverage with Zurich only excess over *any* other insurance provided to the general contractor as an additional insured, the American Family policy states that it provides primary CGL coverage for GFTDC and is rendered excess only if there is

"[a]ny other *primary* insurance" available to GFTDC as an additional insured. Stated otherwise, the Zurich policy in *Regal Homes* purported to convert from primary to excess coverage if the general contractor had access to primary, excess, contingent, or other insurance as an additional insured. In contrast, the American Family policy purports to convert from primary to excess coverage only if GFTDC has access to other primary insurance as an additional insured.

## B

The language in the policy Ohio Casualty issued to Trussman, one of the Astragal Subcontractors, is identical to the language in the additional insured endorsement in the subcontractor's policy that the Arizona Court of Appeals determined (a) did not conflict with the "other insurance" provisions of the general contractor's direct primary CGL policy with Auto-Owners, and (b) provided "additional insured coverage for [the general contractor] that was excess to the Auto-Owners coverage." *Id.* at 618.

The "other insurance" language in Ohio Casualty's additional insured endorsement cannot reasonably be read to contradict, or otherwise be inconsistent with, the "other primary insurance" provision in the American Family policy. Both can be given effect without depriving GFTDC of primary coverage. Ohio Casualty's additional insured endorsement includes two alternative conditions

11

precedent: (1) an insurance contract provision specifically requiring that the Ohio Casualty insurance be primary or (2) a request by Trussman that the Ohio Casualty coverage apply on a primary basis to GFTDC. American Family's coverage remains primary because neither condition precedent is satisfied. Accordingly, the Ohio Casualty coverage available to GFTDC as an additional insured remains excess. Because there is no evidence that the American Family policy limits were exhausted by the defense and settlement of the *Astragal* litigation, neither the excess coverage nor the duties to investigate and defend under the Ohio Casualty policies were triggered. *See Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282, 287 (Ariz. 2003) ("Until a primary insurer offers its policy limit, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all.").

## C

Unlike the Ohio Casualty policy language, the wording in the remaining Astragal Subcontractors' policies with National Fire does not have a close "counterpart" in the policies that were considered by the Arizona Court of Appeals in *Regal Homes*.

Read together, the pertinent provisions in National Fire's policies provide that the coverage available to any "insured" (named or additional) covered by the

12

policy is excess unless: (1) a "Named Insured," which includes Diversified Drywall, Faith Plumbing, Century Roofing, and R.T. Brown in this case, has coverage under another policy; and (2) that other policy is "written explicitly to apply in excess" of the coverage provided in the National Fire policy. Stated otherwise, National Fire's "other insurance" provision works to convert the direct primary CGL coverage for its named insureds to excess coverage if those named insureds obtain any other insurance, unless the named insureds obtain policies that expressly provide coverage is excess over the primary CGL coverage of the National Fire policy. For all other "insureds" (including additional insureds like GFTDC), and for "named insureds" who obtain any coverage that is not expressly excess over the National Fire coverage, the National Fire policy is excess.

Accordingly, because GFTDC is afforded only excess coverage as an additional insured under the National Fire policies, the condition precedent in American Family's "other primary insurance" provision is not satisfied to convert that coverage to excess. Giving literal effect to the pertinent provisions of both policies does not leave GFTDC without primary coverage, and that result is not dependent on which policy is read first. *See Bogart*, 717 P.2d at 452 (stating that "other insurance" provisions must be disregarded if giving effect to each would cancel out all coverage "and the final result would depend upon which policy was

read first"). This is because the National Fire policy provisions cannot reasonably be read to contradict, or otherwise be inconsistent with, the "other primary insurance" clause in American Family's policy for GFTDC. Finally, as discussed above, because the American Family policy limits were not exhausted by the defense and settlement of the *Astragal* litigation, the excess coverage under the National Fire policies is not implicated.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of Appellee Insurers Ohio Casualty and National Fire on the ground that the "other insurance" provisions in their policies and in American Family's policies are not mutually repugnant. Because American Family's policy limits were not exhausted by its defense of GFTDC and the settlement in the *Astragal* litigation, the excess coverage under the Appellee Insurers' policies was not implicated. Additionally, we do not address the sufficiency of GFTDC's tender to Ohio Casualty because the foregoing conclusions render the issue moot. Each side shall bear its own costs.

**AFFIRMED.**

14